311 So.2d 142 (1975)
Henry W. THIESS and Frances E. Thiess, Husband and Wife, Appellants,
v.
ISLAND HOUSE ASSOCIATION, INC., a Florida Non-Profit Corporation, Appellee.
No. 73-549.
District Court of Appeal of Florida, Second District.
April 2, 1975.
Rehearing Denied May 6, 1975.
Lyons & Beaudry, Sarasota, for appellants.
David S. Yost, Williams, Parker, Harrison, Dietz & Getzen, Sarasota, for appellee.
PER CURIAM.
This is an appeal from a judgment upholding the validity of certain amendments to the Declaration of Condominium of Island House Association, Inc. (Association).
Island House is a beachfront residential condominium in Sarasota County. Thirty-eight of its seventy-three units are onestory villas; the remaining thirty-five are apartments grouped in four high-rise buildings. The Declaration of Condominium provided that the undivided share owned by each unit in the common elements appurtenant to each unit and the fraction of *143 sharing common expenses and owning common surplus should be one-seventy third each. The value of the apartment units was somewhat higher than the villa units. Thus were sown the seeds of the problem which later occurred.
By 1969 the Association, which is a non-profit corporation consisting of the property owners, had assumed the management of Island House from the developer. In that year numerous leaks occurred, particularly in the high-rise apartment buildings, which caused serious water damage. Repairs were urgently required, but in order to pay for the repairs the Association needed to obtain $50,000. Since there were more villa units than apartment units, where self interest was concerned, the villa units could out-vote the apartment units. The villa unit owners did not wish to carry the burden of paying an amount equal to that of the apartment owners to repair the apartment roofs, particularly where the value of the apartment units exceeded that of the villa units. On the other hand, in view of the condominium concept of sharing common expenses, the apartment owners were reluctant to pay the entire cost of the repairs. Several of the unit owners were threatening to sue the Association for failure to go forward with the repairs.
After failing to obtain a voluntary agreement, the Association proposed an amendment to the declaration whereby the share of the common expenses and the common surplus for each unit would be changed so as to reflect the pro rata portion of each unit's assessed value as compared to the total assessed value of all units. The amendment was approved by more than fifty-one percent of the unit owners, and the $50,000 assessment was made in the new proportions. Mr. and Mrs. Thiess (appellants), who were apartment owners, refused to pay the assessment. The Association brought suit to enforce the assessment pursuant to the authority of Fla. Stat. § 711.15 (1969).
In addition to contesting the validity of the amendment, which modified the share of the common expenses, appellants also attacked a subsequent amendment relating to laundry machines. This problem was precipitated by the fact that the two apartments on each floor of the high-rise buildings were serviced by a washer and dryer located in an adjacent hallway; whereas, the thirty-eight villas shared a single washroom equipped with coin-operated machines. In 1971, the Association, by a majority vote of the unit owners, further amended the declaration to provide that the washers and dryers in the apartment buildings should be limited to the exclusive use of the apartment owners on the respective apartment floors served by such equipment and be maintained at the sole expense of such apartment owners. Thereafter, the Association refused to pay the expenses of maintaining the machines in the apartment buildings. Following the taking of testimony, the lower court ruled both amendments to be valid.
Those portions of the Condominium Act in 1969 pertinent to this appeal are as follows:
"711.03 Definitions. As used in this law:
(1) Assessment means a share of the funds required for the payment of common expenses which from time to time is assessed against the unit owner.
* * * * * *
(3) Bylaws mean the bylaws for the government of the condominium as they exist from time to time.
(4) Common elements means the portions of the condominium property not included in the units.
(5) Common expenses means the expenses for which the unit owners are liable to the association.
(6) Common surplus means the excess of all receipts of the association, including but not limited to assessments, rents, *144 profits and revenues on account of the common elements, over the amount of common expenses.
(7) Condominium is that form of ownership of condominium property under which units of improvements are subject to ownership by one or more owners, and there is appurtenant to each unit as part thereof an undivided share in the common elements.
(8) Condominium parcel means a unit together with the undivided share in the common elements which is appurtenant to the unit.
(9) Condominium property means and includes the land in a condominium, whether or not contiguous, and all improvements thereon and all easements and rights appurtenant thereto intended for use in connection with the condominium.
* * * * * *
(11) Limited common elements means and includes those common elements which are reserved for the use of a certain unit or units to the exclusion of other units.
* * * * * *
(13) Unit means a part of the condominium property which is to be subject to private ownership.
(14) Unit owner or owner of a unit means the owner of a condominium parcel."
"711.04 Condominium parcels; appurtenances; possession and enjoyment
(1) A condominium parcel is a separate parcel of real property, the ownership of which may be in fee simple, or any other estate in real property recognized by law.
(2) There shall pass with a unit as appurtenances thereto:
(a) An undivided share in the common elements.
(b) The exclusive right to use such portion of the common elements as may be provided by the declaration.
* * * * * *
(d) An undivided share in the common surplus.
(e) Such other appurtenances as may be provided in the declaration.
(3) The owner of a unit is entitled to the exclusive possession of his unit. He shall be entitled to use the common elements in accordance with the purposes for which they are intended, but no such use shall hinder or encroach upon the lawful rights of owners of other units."
"711.06 Common elements
(1) Common elements includes within its meaning the following items:
(a) The land on which the improvements are located and any other land included in the condonimium property whether or not contiguous.
(b) All parts of the improvements which are not included within the units.
* * * * * *
(e) Installations for the furnishing of utility services to more than one unit or to the common elements or to a unit other than the unit containing the installation.
(f) The property and installations in connection therewith required for the furnishing of services to more than one unit or to the common elements.
(2) The declaration may designate other parts of the condominium property as common elements."
"711.08 Creation of condominiums; contents of declaration
(1) A condominium may be created by recording in the public records of the county wherein the land to be included is located a declaration ... which *145 ... shall contain or provide for the following matters:
* * * * * *
(f) The undivided shares, stated as percentages or fractions, in the common elements which are appurtenant to each of the units.
(g) The proportions or percentages and manner of sharing common expenses and owning common surplus.
* * * * * *
(1) Such other provisions not inconsistent with this law as may be desired, including but not limited to those relating to amendment of the declaration, values of the condominium property and of each unit or condominium parcel, statement of purpose for which condominium property and units are intended, designation of limited common elements, responsibility for maintenance and repair of units, insuring of the condominium property against loss and the owners and association against liability, reconstruction or repair after casualty and votes required in connection therewith, use restrictions, limitation upon conveyance, sale, leasing, purchase, ownership and occupancy of units, termination of the condominium."
* * * * * *
"711.10 Amendment of declaration
* * * * * *
(3) Unless otherwise provided in the declaration as originally recorded, no amendment shall change any condominium parcel unless the record owner thereof and all record owners of liens thereon shall join in the execution of the amendment."
* * * * * *
With respect to the first amendment, the appellants argue that the proportion of sharing common expenses could not be changed unless all the unit owners joined in the execution of the amendment pursuant to § 711.10. Since § 711.10 precludes the changing of a condominium parcel without the owner's consent, the issue turns on whether the condominium parcel includes the owner's share of the common expenses.
The definition of condominium parcel first refers to a unit which in turn is defined as that part of the condominium property which is subject to private ownership. As related to Island House, this would, of course, be the apartment or villa, as the case may be. The definition of condominium parcel also includes an undivided share in the common elements appurtenant to the unit. The common elements are separately defined as those portions of the condominium property not included in the units. These would include such portions of the property as the hallways, the grounds and the recreation areas.
§ 711.04 provides that certain items should pass as an appurtenance to the unit. While there is nothing in the Act which specifically states that an appurtenance is part of a condominium parcel, the unit is part of the parcel and an appurtenance to the unit necessarily passes as an incident to the unit.[1] Among the appurtenances specified in § 711.04 is an undivided share in the common surplus which is defined as the excess of all receipts over the amount of common expenses. It is evident the common surplus of Island House is created by the extent that the assessments against the condominium owners have exceeded the costs of operating and maintaining the property. Therefore, if the share of the *146 common surplus cannot be changed without the consent of the affected owner, it follows that to change his share of common expenses should also require his consent.[2]
In the final analysis we have a situation where at the time appellants purchased their unit the Declaration of Condominium specified that they would become the owner of one-seventy third of the common elements and would be obligated for one-seventy third of the common expenses. In absence of a statement in the declaration that an owner's condominium parcel could be changed without his consent, the appellants had a right to rely on the fact that their proportionate obligation to share in the common expenses could not be altered unless they agreed to it. Since § 711.15 provides that the Association may have a lien on each condominium parcel for any unpaid assessments, any other interpretation would place the minority of condominium owners at the mercy of the majority. The sharing of common expenses based upon a proportion of each unit's value may be advisable, but the original declaration specified otherwise. In this instance most of the money went to the upkeep of the apartments, but the next time it may be the villas which will need the repairs. Appellants did not join in the execution of the amendment; therefore, they may not be charged more than the share of common expenses allocated to them in the original declaration.
Our ruling on the first amendment necessarily disposes of the second. The washers and dryers in the apartments were common elements. The effect of the amendment was to place the entire expense of operating these machines upon the apartment owners rather than apportioning the expenses among all of the unit owners. Appellants' share of the common expenses with respect to these machines has been changed without their consent. The fact that they have been given exclusive use of the machines is irrelevant because they have not sought this. Presumably, the ready access to washers and dryers which would be maintained out of common expenses was a factor in determining the price for which appellants purchased their unit.
In view of our disposition of the case, it is unnecessary for us to pass upon appellants' objections to the procedure by which the amendments were passed.
Reversed.
McNULTY, C.J., and HOBSON and GRIMES, JJ., concur.
NOTES
[1] The meaning of the word appurtenance is discussed in 6 C.J.S. 139 as follows:

"An appurtenance; a thing used with, and related to or dependent on, another thing more worthy, and agreeing in its nature and quality with the thing whereunto it is appendant or appurtenant; a thing used with the land and for its benefit annexed to and connected therewith, and which may be of a corporeal or incorporeal nature; that which belongs to another thing, but which has not belonged to it immemorially; that which belongs to or is connected with something else to which it is subordinate or less worthy, and with which it passes as an incident".
[2] In 1974 our legislature amended § 711.10 (3) to more clearly provide that an owner's share of common expenses cannot be changed without his consent.