Argued at Pendleton October 26, 1976, affirmed February 25, 1977

ASSOCIATION OF UNIT OWNERS OF THE
INN OF THE SEVENTH MOUNTAIN,
*Respondent,*
*v.*
GRUENFELD, *Appellant.*
(No. 19221, SC P-2485)
560 P2d 641

William M. Holmes, Bend, argued the cause for appellant. With him on the brief was Gray, Fancher, Holmes & Hurley, Bend.

Stanley Erickson, Tualatin, argued the cause and filed a brief for respondent.

Before O'Connell*, Presiding Justice, and Holman, Tongue, Howell, and Bryson, Justices.

BRYSON, J.

Holman, J., dissenting.

*O'Connell, J., term expired January 3, 1977.

## BRYSON, J.

Plaintiff, an association of unit owners under the Oregon Unit Ownership Law,[1] brought this action to recover charges assessed by it against defendant while she was the owner of a condominium at The Inn of the Seventh Mountain and a member of the plaintiff association. Defendant entered a general denial. The trial court, sitting without a jury, found defendant liable for the full amount of the assessments and entered judgment in favor of plaintiff. Defendant appeals.

Defendant contends that "[t]he Court erred in including in its judgment charges and assessments by plaintiff and against defendant that were not common expenses and that were not authorized by plaintiff's Bylaws."

Defendant argues that electric power, heat, television signal, firewood, garbage removal, security police, fire protection, insurance, contingency reserves, and television set and furniture rentals benefit unit owners individually rather than the common owners of the common elements; that plaintiff's Board of Directors lacks authority to assess for these items and services and therefore plaintiff cannot recover.

Defendant took title to her condominium at The Inn of the Seventh Mountain by deed dated January 3, 1973. As a unit owner, defendant automatically became a member of the plaintiff and subject to its declarations and bylaws. ORS 91.505(1) provides:

> "(1) 'Association of unit owners' means all the unit owners acting as a group in accordance with the declaration and bylaws."

ORS 91.630 provides:

> "Each unit owner shall comply with the bylaws and with the administrative rules and regulations adopted pursuant thereto, and with the covenants, conditions and

[1]The Oregon Unit Ownership Law is set forth in ORS 91.505 through 91.675 and is hereinafter referred to as the "Law."

restrictions in the declaration or in the deed to his unit. Failure to comply therewith shall be grounds for an action maintainable by the association of unit owners or by an aggrieved unit owner."

In defendant's purchase agreement of September 19, 1972, it was agreed:

"* * * * *.

"ASSOCIATION OF UNIT OWNERS. Purchaser, by his purchase of a unit hereunder, becomes a member of The Association of Unit Owners of The Inn of the Seventh Mountain, which has already been formed. Purchaser hereby ratifies and confirms all actions taken by said association prior to the date hereof, including the elections of directors thereof until the next annual meeting of said association. Purchaser also adopts and ratifies the bylaws of said association as of the date hereof.

"* * * * *."

In accordance with plaintiff's bylaws, adopted pursuant to the Law,[2] plaintiff's unit owners are liable for assessments charged in accordance with Article VI of plaintiff's amended bylaws. Article VI provides:

"1. *Expenses and Assessment.* Each unit owner shall contribute prorata toward the common condominium expenses of The Inn, including (but without being limited to), the cost of operation, maintenance, repair and replacement of all common elements and the cost of insurance, in the proportion to his interest in the general common areas. One of the items of common expense for which the Board of Directors shall assess the unit owners is the monthly charge necessary to maintain the lease of the real property from Condominium Land Co. in full force and effect. In allocating this common expense, the Board of Directors shall assess each unit owner based on

---

[2]The legislative history of the Oregon Unit Ownership Law reveals that it was passed to permit county assessors to treat individual condominiums, and their proportionate share of the common elements, as separately taxable units. Legislators were informed that without such tax treatment, individuals purchasing condominium units would be unable to qualify for Federal Homeowners Association insured mortgages. (Testimony of Mr. Kane, adviser to the Legislative Interim Committee on Small Businesses, before hearings of Senate Taxation Committee, February 18, 1963, and House Committee on Taxation, May 3, 1963.)

the type of his unit as computed in said lease agreement. The Board of Directors shall fix a monthly assessment for each unit in an amount sufficient to provide for all current expenses, a reasonable reserve for future expenses, and such other expenses as the Board of Directors may deem necessary. Such monthly assessments shall be due and payable quarterly in advance on the first (1st) day of every calendar quarter without demand, and delinquent accounts shall bear interest at the rate of ten per cent (10%) per annum from the due date until paid. The amounts received shall be held by the Treasurer in trust until expended for the purposes for which they were assessed.

"* * * * *."

## ORS 91.505(4) provides:

"(4) 'Common expenses' means:

"(a) Expenses of administration, maintenance, repair or replacement of the common elements;

"(b) Expenses agreed upon as common by all the unit owners; and

"(c) Expenses declared common by subsection (1) of ORS 91.590 and subsection (2) of ORS 91.595, or by the declaration or the bylaws of the particular condominium."

## ORS 91.595(2) provides:

"(2) The manager, as trustee for the unit owners, shall, if required by the declaration, the bylaws or by a majority of the unit owners, insure the building against loss or damage by fire and such other hazards as shall be required * * *. The premiums for such insurance on the building are common expenses."

"Under FHA requirements common expenses must be assessed against each apartment owner in proportion to his share in the common elements." (Footnote omitted.) 1 Ferrer and Stecher, Law of Condominium 303, Ch 33, § 440.

"In its simplest analysis, the association of owners acts as agent for the individual apartment owners in making necessary contracts pertaining to the management and upkeep of the common areas and facilities, with resultant liability accordingly. The extent of this

[ 263 ]

authority will ordinarily be found in the declaration and in the bylaws. * * *" *Id* at 319, Ch 39, § 494.

ORS 91.560 provides what shall be provided in the bylaws. Subsection (6) provides the manner of collecting from the unit owners their share of the common expenses.

ORS 91.525 and 91.530 provide for the recording of "a declaration" in the office of the recording officer of the county wherein the property is located and what is to be contained therein. ORS 91.530(1) provides:

"(1) A declaration shall contain:

"* * * * *.

"(d) A description of the general common elements and the percentage of the interest of each unit owner therein.

"* * * * *.

"(h) Any other details regarding the property that the person executing the declaration considers desirable."

The declaration filed by plaintiff includes the following:

"*Insurance.* * * *.

"(A) For the benefit of the Association and the owners, the Board of Directors shall obtain and maintain at all times, and shall pay for out of the common expense funds, the following insurance:

"* * * [F]ire insurance, with the extended coverage endorsement, for the full insurable replacement value * * * and such other fire and casualty insurance as the Board of Directors shall determine * * *.

"* * * * *.

"Interpretation. The provisions of this Declaration shall be liberally construed to effectuate its purpose of creating a uniform plan for the development and operation of a condominium Project. Failure to enforce any provision hereof shall not constitute a waiver of the right thereafter to enforce that provision or any other provision hereof."

In *Bauman v. Bauman,* 245 Or 574, 577, 423 P2d 181 (1967), the court stated:

> "The only legal principle applicable to guide our decision is that the language of an agreement should be interpreted to effectuate the intentions of the parties, as those intentions can be determined from the language used and other relevant circumstances."

■ It is clear that it was the intention of the parties that the Board of Directors of plaintiff be given discretion to determine what expenses were necessary to achieve a uniform plan for the development and operation of the condominium project and to assess the unit owners pro rata for such common expenses. Defendant, in purchasing her condominium unit, agreed to pay a monthly assessment in an amount sufficient to provide for all current expenses, a reasonable reserve for future expenses and such other expenses as the plaintiff's Board of Directors might deem necessary.[3]

■ With the exception of the rental fees for the television set and furniture, which were charged only to those members using such rentals, all of the items and services assessed can be reasonably identified as necessary to accomplish the plaintiff's purpose of "creating a uniform plan for the development and operation of the condominium project."

The assessment for contingency reserves is specifically provided for in Article VI of plaintiff's amended bylaws. Such reserves assure available capital to meet emergency expenses such as storm damage or unanticipated problems. It is specifically provided that there will be a "rebate of over-assessment" on an annual basis. Insurance and a contingency reserve fund are specifically provided for by paragraphs 19

[3]Today many home buyers purchase condominium houses and become automatically subject to the authority of some type of homeowners' association. Such homeowners are bound to abide by the dictates of the association, which is empowered to create, alter, and enforce a comprehensive set of regulations governing important aspects of community life. See Uriel Reichman, *Residential Private Governments: An Introductory Survey,* 43 U Chi L Rev 253 (1976).

and 23 of the recorded amended declaration. ORS 91.595(2) declares that premiums for such insurance are "common expenses."

It may be that the firewood item would be more appropriately billed on a user basis than on the present pro rata basis. However, defendant does not contend that the expense allocation method selected by the Board of Directors is so unreasonable as to be an abuse of the discretion granted to it in the bylaws.

Defendant also contests plaintiff's assessment of the television and furniture rental fees. The evidence shows that members not wishing to procure their own furniture are provided the option of leasing the television set and furniture from suppliers specified by plaintiff.[4] Suppliers are paid directly by the plaintiff and participating members are billed individually through their monthly assessment. The evidence further shows that defendant elected to avail herself of this leasing program, and having secured the use and benefit of these services she is not now in a position to deny liability under the plan.

We conclude that the charges which the court included in the judgment, as assessed by the Board of Directors, were within the discretionary powers granted to plaintiff's Board of Directors by the bylaws, recorded declaration, and statutory law. The evidence supports the court's findings.

Affirmed.

---

[4]"Extent of Unit Owners' Liability for Common Expenses. In the absence of statutory limitation, there appears to be no escape-proof method of insulating the unit owners in a condominium regime from unlimited liability resulting from the maintenance and operation of the structure. * * * If the association is unincorporated [plaintiff is incorporated], contractual liability of the individual members is clear, since members of an unincorporated association are liable as principals on all duly authorized contracts of the association * * *." 1 Rohan and Reskin, Condominium Law and Practice 6-19, § 6.03(2). See also, 6 Am Jur 2d, Associations and Clubs—Personal Liability of Members § 46; and Restatement, Agency Second § 159 (1958).

**HOLMAN, J.,** dissenting in part.

In order for the Association to prorate and assess expenses to a unit owner as "common expenses," the authority therefor must exist in the state's statutes or in the declaration or bylaws of the Association. It is the purpose of this partial dissent to demonstrate that there is no authority from any of these sources for assessing a unit owner for electric power, heat, firewood, and garbage disposal.

ORS 91.615 provides:

"Apportionment of common profits and expenses; liability of unit owner. (1) *Unless otherwise provided in the declaration,* the common profits of the property shall be distributed among, and *the common expenses shall be charged to, the unit owners according to the percentage of undivided interest of each in the common elements.* (Emphasis mine.)

"* * * * *"

Common expenses are defined by ORS 91.505(4), as follows:

" '*Common expenses' means*:

"(a) *Expenses* of administration, maintenance, repair or replacement *of the common elements*;

"(b) *Expenses agreed upon as common by all the unit owners*; and

"(c) *Expenses declared common* by subsection (1) of ORS 91.590 and subsection (2) of ORS 91.595, or *by the declaration or the bylaws of the particular condominium*." (Emphasis mine.)

Common elements are defined by ORS 91.505(3), as follows:

" 'Common elements' means the general common elements and the limited common elements."

General common elements are defined by ORS 91.505(6) as:

" 'General common elements,' unless otherwise provided in a declaration or by consent of all the unit owners, means:

"(a) the land, whether leased or in fee simple, on

which a building is located except any portion thereof included in a unit or made a limited common element by the declaration;

"(b) the foundations, columns, girders, beams, supports, main walls, roofs, halls, corridors, lobbies, stairs, fire escapes, entrances and exits of a building;

"(c) the basements, yards, gardens, parking areas and outside storage spaces;

"(d) Installations of central services such as power, light, gas, hot and cold water, heating, refrigeration, air conditioning, waste disposal and incinerating;

"(e) The elevators, tanks, pumps, motors, fans, compressors, ducts and in general all apparatus and installations existing for common use;

"(f) The premises for the lodging of janitors or caretakers of the property; and

"(g) All other elements of a building necessary or convenient to its existence, maintenance and safety, or normally in common use."

Limited common elements are defined by ORS 91.505 (8) as:

" 'Limited common elements' means those common elements designated in the declaration or by agreement of all the unit owners, as reserved for the use of a certain unit or number of units, to the exclusion of the other units."

Referring back to ORS 91.505(4), it is apparent that electric power, heat, firewood, and garbage disposal do not come within the provisions of paragraph (a) because they are not expenses of administration, maintenance, repair or replacement of the common elements, either general or limited. Neither do they come within paragraph (b) because they are not expenses shown to have been agreed upon as common by *all* the unit owners. In considering whether the expenses in question come within paragraph (c), we must first determine whether they are expenses within subsection (1) of ORS 91.590, which is as follows:

"Where the purchaser of a unit obtains title to the unit as a result of foreclosure of the first mortgage or trust deed, such purchaser, his successors and assigns,

shall not be liable for any of the common expenses chargeable to such unit which became due prior to the acquisition of title to such unit by such purchaser. Such unpaid share of common expenses shall be a common expense of all the unit owners including such purchaser, his successors and assigns."

It is obvious that the items which I question do not come within this subsection of the statute.

Further heeding the requirements of ORS 91.505(4) (c), we must determine whether the items come within the expenses mentioned in ORS 91.595(2), which subsection is:

"The manager, as trustee for the unit owners, shall, if required by the declaration, the bylaws or by a majority of the unit owners, insure the building against loss or damage by fire and such other hazards as shall be required, without prejudice to the right of each unit owner to insure his own unit for his own benefit. The premiums for such insurance on the building are common expenses."

It is obvious that this statute also has no application to the items in question.

We again refer back to ORS 91.505(4) (c) and see that the remaining expenses which may be treated as common are those declared to be so by the declaration of the Association or by its bylaws. We first examine the declaration. Apparently, the only parts which the majority thinks are relevant are the following, which were quoted in the majority's opinion:

"*Insurance.* * * *.

"(A) For the benefit of the Association and the owners, the Board of Directors shall obtain and maintain at all times, and shall pay for out of the common expense funds, the following insurance:

"* * * [F]ire insurance, with the extended coverage endorsement, for the full insurable replacement value * * * and such other fire and casualty insurance as the Board of Directors shall determine * * *.

"* * * * *.

"*Interpretation.* The provisions of this Declaration

[ 269 ]

shall be liberally construed to effectuate its purpose of creating a uniform plan for the development and operation of a condominium Project. Failure to enforce any provision hereof shall not constitute a waiver of the right thereafter to enforce that provision or any other provision hereof."

Standing alone, there is no way that the provision for insurance and for a liberal construction to effectuate the purpose of creating a uniform plan for the operation of the condominium can transpose electric power, heat, firewood, and garbage disposal, which are based upon individual use, into common expenses.

Lastly, we now turn to the provisions of the bylaws for authorization to the Association to treat the expenses in question as "common." They provide:

"1. *Expenses and Assessment.* Each unit owner shall contribute pro rata toward *the common condominium expenses* of The Inn, including (but without being limited to), the cost of operation, maintenance, repair and replacement *of all common elements and the cost of insurance,* in the proportion to his interest in the general common areas. One of the *items of common expense* for which the Board of Directors shall assess the unit owners *is the monthly charge necessary to maintain the lease of the real property* from Condominium Land Co. in full force and effect. In allocating *this common expense*, the Board of Directors shall assess each unit owner based on the type of his unit as computed in said lease agreement. The Board of Directors shall fix a monthly assessment for each unit in an amount sufficient to provide for all current expenses, a reasonable reserve for future expenses, and such other expenses as the Board of Directors may deem necessary. Such monthly assessments shall be due and payable quarterly in advance on the first (1st) day of every calendar quarter without demand, and delinquent accounts shall bear interest at the rate of ten per cent (10%) per annum from the due date until paid. The amounts received shall be held by the Treasurer in trust until expended for the purposes for which they were assessed." (Emphasis mine.)

The provision availed of by the majority in the above section of the bylaws as authorizing its result is that

sentence which provides, "[t]he Board of Directors shall fix a monthly assessment for each unit in an amount sufficient to provide for all current expenses, a reasonable reserve for future expenses, and such other expenses as the Board of Directors may deem necessary." The subject of the entire paragraph on "Expenses and Assessment" is "common expense," and the sentence set forth must be interpreted in this light as it does not refer to all expenses without regard to whether or not they are common. If the construction put upon this sentence is that which is urged by the majority, it would mean that the Board of Directors could take any conceivable expense that it desires and declare that it is a common expense. This is not a reasonable interpretation of the language when found in this context.