Sherwin H. RAYMOND and Elizabeth Raymond, Appellants,

v.

AQUARIUS CONDOMINIUM OWNERS ASSOCIATION, INC., Appellee.

No. 2483CV.

Court of Appeals of Texas, Corpus Christi.

Nov. 10, 1983.

Lee Arnett, Brownsville, for appellants.

Jeffrey D. Roerig, Brownsville, for appellee.

Before NYE, C.J., and YOUNG and KENNEDY, JJ.

## OPINION

NYE, Chief Justice.

Appellee, Aquarius Condominium Owners Association, Inc., brought this suit against appellants, Sherwin H. and Elizabeth Raymond, to collect assessments charged against appellants in connection with two condominium apartments purchased by appellants and to foreclose upon the apartments. Appellants countered with a claim for damages to the apartments and contended that the assessments sued for by Aquarius were invalid assessments under the Texas Condominium Act. Following a trial before the court without a jury, the trial judge entered judgment for $39,965.00 against appellants as the full amount of damages suffered by appellee, less $5,000.00 for injury to the apartments. The court granted appellee a lien against both units to secure the entire amount of the judgment. Appellants raise five points of error on appeal. We affirm the judgment of the trial court.

In 1973, appellants from the state of Massachusetts contracted to purchase two apartments in the Aquarius Condominium, situated at South Padre Island, Cameron

County, Texas. They made the initial down payments and delivered the balances owed to purchase both units. Thereafter, on October 15, 1974, Condominium Warranty Deeds were recorded in the Condominium Records of Cameron County, Texas, conveying apartments 806 and 908 in the Aquarius Condominium building from Zodiac Corporation, the developer, to appellants.

Appellee is defined in the Declaration for Aquarius Condominium as a Texas non-profit corporation organized as the governing body of the council of co-owners, meaning all the owners acting as a group. The Declaration establishing the Aquarius Condominium regime was adopted pursuant to the Texas Condominium Act, TEX.REV. CIV.STAT.ANN. art. 1301a (Vernon 1980), and was recorded as required by the Act. Pursuant to the Declaration, appellee exists primarily for the maintenance, repair and replacement of the common elements. Through its Board of Directors, the appellee administers the overall operation of the project constituted as the Aquarius Condominium.

The Warranty Deeds to both apartments were made expressly subject to the provisions of the Texas Condominium Act and incorporate by reference the Condominium Declaration for Aquarius Condominium. The deeds also state the conveyances are made subject to "all rules, regulations and agreements lawfully made and/or entered into pursuant to the provisions of the Condominium Act and Condominium Declaration." The Declaration provided that each of the two condominiums purchased by appellants included a 1/74 ownership interest in the common elements of the condominium regime. In that respect, appellants were to bear their proportionate share of the "common expenses" during their ownership of the units. The Declaration states that "common expenses" include:

(1)(j) 1. All sums assessed against the owners by the Board of Directors;

2. Expenses of administration, maintenance, repair or replacement of the common elements;

3. Expenses agreed upon as common expenses by the Council of Co-owners; and

4. Expenses declared common expenses by the provisions of the Act, the Declaration or the bylaws.

The Declaration further provides that a lien in the amount due shall be fixed upon the owner's unit in favor of appellee on failure or refusal of any owner to make any payment of the common expenses when due.

It is those amounts assessed against appellants by the Board of Directors of appellee which gave rise to the present litigation.

In the first four points of error, appellants challenge the legal and factual sufficiency of the evidence to support the trial court's judgment against them. Appellants complain that there is no evidence or, in the alternative, insufficient evidence to support the implied finding that the assessments against appellants were lawful. In considering a "no evidence" or "insufficient evidence" point of error, we will follow the well established test set forth in *Glover v. Texas General Indemnity Company,* 619 S.W.2d 400 (Tex.1981); *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965); *Allied Finance Company v. Garza,* 626 S.W.2d 120 (Tex.Civ. App.—Corpus Christi 1981, writ ref'd n.r. e.); CALVERT, *No Evidence and Insufficient Evidence Points of Error,* 38 Tex.L. Rev. 359 (1961).

■ The record shows that a request for findings of fact and conclusions of law was filed by appellants. However, there is nothing in the record to show that a subsequent complaint for failure to file such findings and conclusions was ever presented to the trial judge as required by Rules 296 and 297 of the Texas Rules of Civil Procedure. Having failed to properly present their request for findings of fact and conclusions of law, all questions of fact are presumed found in support of the judgment, and the judgment of the trial court must be affirmed upon any legal theory finding support in the pleadings and evidence. *Lassiter v. Bliss,* 559 S.W.2d 353 (Tex.1977); *Owens v. Travelers Insurance Company,* 607 S.W.2d 634, 637 (Tex.Civ. App.—Amarillo 1980, writ ref'd n.r.e.); *City of Kingsville v. International Association of*

*Firefighters, etc.,* 568 S.W.2d 397 (Tex.Civ. App.—Corpus Christi 1978, no writ).

Appellants' defense to payment of the assessments is predicated on the argument that the rental pool operated by appellee results in a net expense or at least causes an increase in the existing expenses which has the effect of forcing appellants to be a part of the rental pool against their wishes. Restated, appellants contend the principal question in this case is:

"In the absence of specific authorization in the Act, the Declaration, or the bylaws, may the Board assess condominium owners who are not members of the rental pool for the expenses of operation of the rental pool without their consent."

■ Our review of the evidence under the standards as set out above shows that the evidence is sufficient to support appellee condominium owners' position that the rental operation at Aquarius does not excuse appellants from contributing their pro rata share of the "common expenses" during ownership of both apartments.

In September 1974, the three original Directors of appellee set the initial assessment at $85.00 per 1/74 ownership interest. Appellants acknowledge receipt of their first billings for expenses in connection with their apartments dated March and April 1, 1975, which indicate the current charges of $85.00 per month per unit with the unpaid balances forwarded.

Effective May 1, 1976, the evidence and testimony verifies that the Board of Directors of appellee approved an increase of the regular monthly assessments to $162.00 a month for units without telephones, such as the two purchased by appellants. Mrs. Lee Lancaster, a condominium owner, officer and Director since April of 1976, testified that, because the previous assessment was not covering the total expenses incurred by the project operation, the Board believed that it was necessary to increase the monthly assessment. In addition, a single special assessment of $160.00 per unit was approved by the Board to establish a reserve fund to pay immediate bills which appellee was at that time without funds to pay. Appellants admit there is adequate evidence of an emergency to support the need for the $160.00 special assessment. Mrs. Lancaster further testified that, at some time during or shortly after the April 1976 meeting, when appellee was in the process of taking over the operation from Aquarius East, Ltd., appellee made a re-assessment of $1,027.00 per unit. Mrs. Lancaster explained that this sum represented that amount of money advanced by the developer corporation to cover expenses incurred while it was administering the building at a loss. Mrs. Lancaster further testified the reassessment was agreed upon by appellee in order to get developer corporation out of the operation of the Aquarius building.

At the Board of Directors meeting on September 17, 1977, the evidence shows the regular monthly assessments were increased to $190.00 per month per unit or $182.00 per month per unit for those apartments without telephones, effective November 1, 1977. The parties have stipulated that this is the correct amount through the date of the judgment. At the September 1977 meeting, a special assessment of $300.00 per unit was approved by the Board of Directors. The evidence supports the testimony of Mrs. Lancaster that the assessment money was for the use of general improvements and major repair to the building. The assessment was kept in a separate savings account for that purpose. Appellants acknowledge this assessment as one voted on by the Board of Directors for this purpose.

The final charge claimed by appellee as collectible against appellants is for the pro rata share of the insurance amounting to $510.35 per unit for the years 1975 through 1978. Mrs. Lancaster testified that the unit owners were assessed yearly an amount to help cover their portion of the entire structure that is insured.

It is undisputed that appellants have not paid any amount of money for any of the assessments, regular or special, charged against them in connection with their units since the time appellants purchased these

condominiums. Appellants' refusal to pay is premised on their contention that the assessments were not lawfully made in compliance with the Texas Condominium Act, art. 1301a § 15, given appellee's involvement in the operation of a rental pool for the benefit of those owners who choose to participate. It is also undisputed that appellants have not elected to participate in the rental pool during the subject time period. Appellants contend that appellee has expended funds to cover the operation costs of the rental pool in Aquarius and that these expenses associated with the rental pool do not fall into any of the allowable categories of expenses.

The facts, however, show that 25% of the gross rental income and the individual assessments are combined to make up the general operating fund of appellee. The operating expenses of Aquarius are paid from this account which includes additional operating expenses of the rental pool.

Appellants admit that "all co-owners are bound to contribute pro rata toward the expense of administration and of maintenance and repairs of the general common elements, and, ... toward *any other expenses lawfully agreed upon by the Council of Co-owners.*" (Emphasis added.) art. 1301a § 15. The Texas Condominium Act also states that:

> § 15 No owner shall be exempt from contributing towards such expenses by waiver of the use of enjoyment of the common elements, either general or limited, or by abandonment of the apartment belonging to him.

This provision is particularly relevant to the case at bar in that appellants have countered with a claim that the few times they saw the apartments, defects made them uninhabitable. Even considering appellants have been denied the full use and enjoyment of their apartments because of such defects, appellants were on notice by paragraph 9 of the Condominium Declaration that each unit owner *"shall"* pay his proportionate share of the common expenses.

It is undisputed that each person who purchased a condominium unit in the Aquarius Condominium project purchased the unit subject to the terms of the recorded Condominium Declaration and to all of the restrictions and conditions in the Declaration. Similarly, § 9 of the Texas Condominium Act also provides that apartment owners in condominiums accept the terms, conditions and restrictions in the Condominium Declaration by acceptance of deeds to the individual apartment units. See: *Board of Directors of By-the-Sea Council of Co-owners, Inc. v. Sondock,* 644 S.W.2d 774, 780 (Tex.App.—Corpus Christi 1982, writ ref'd n.r.e.).

█ Given the fact that appellants acquired their condominium units subject to the Condominium Declaration which authorizes the appellee and its Board of Directors to assemble and determine the amounts agreed upon as "common expenses," we have looked to the record to find there is sufficient evidence to support the implied finding that the appellee, through the Board of Directors acting within the scope of authority granted in the Bylaws, approved the various expenditures accounted for by appellee. The assessments are reasonably related to the expenses classified as "common expenses" falling under the allowable categories of the Declaration and the Texas Condominium Act. Art. 1301a, § 15.

█ Appellants further complain that all sources of income were commingled into one management operating account and that all operating expenses were paid from this account. Appellants further complain that only one set of books was maintained by appellee and that the books do not specify the expenditures for administration, maintenance, repair or replacement of common elements. Appellants apparently interpret § 14 of the Texas Condominium Act as requiring appellee, or those acting under the direction of appellee, to keep separate records showing specifically the figures related to maintenance and repair expenses of the common elements, completely separated from any other recorded expenses.

§ 14. The administrator, or board of administration, or the person appointed by the bylaws of the regime shall keep or cause to be kept a book with a detailed account of the receipts and expenditures effecting the building and its administration and specifying the maintenance and repair expenses of the common elements and any other exenses incurred by or on behalf of the regime.

A review of all of the evidence concerning the general ledger postings of expenses for the year 1979 shows that appellee has substantially complied with the requirements of § 14 of the Act.

The bookkeeper, a Mrs. Price, testified that she used the existing accounting format utilized by appellee to set up the system that she was using at the time of trial. Mrs. Price also testified that she found no discrepancies in the way the books were kept from January of 1979 until the time she took over in May of 1979. She explained that the books do partially break down the expenses for maintenance and repair of the common elements, such as contracts and maintenance on elevators.

Mr. William Price, manager of appellee association, testified at length to the general operations of appellee as to the building itself and to various aspects of the rental pool operation. He stated there are between 25 to 33 apartments in the rental pool, although the owners take them in and out as they please. Mr. Price testified that there are certain "fixed expenses" that would be incurred as a part of the general management scheme of Aquarius, whether or not appellee operated a rental pool. For instance, the elevator contract expense was a fixed amount per month, although the rental pool effects the overall maintenance of the building equipment. Mr. Price summarized, however, by stating that the general operating expense of the Aquarius building exceeds the total of the assessments charged against the owners. The additional income contributed from the rental pool covers the deficit of the general operating expenses. Mr. Price testified that, without the additional rental income, the only way the Aquarius could be operated in the black would be to increase the assessments.

There are no Texas cases that we have been able to find that are directly in point. Similarly, there appear to be no cases from other states directly in point. Appellants rely on several out-of-state cases to support their proposition that the operation of a rental pool is not the type of power which may be inferred to appellee. See *Makeever v. Lyle*, 125 Ariz. 384, 609 P.2d 1084 (Ariz. App.1980). Appellants also cite cases in which it has been held that the powers of the Council of Co-owners "must be clearly given" by the Act, the Declaration or the bylaws, otherwise certain acts by the Board are deemed unauthorized. Id.; *Pepe v. Whispering Sands Condominium Association, Inc.*, 351 So.2d 755 (Fla.Dist.Ct.App. 1977); *Sterling Village Condominium, Inc. v. Breitenbach*, 251 So.2d 685 (Fla.Dist.Ct. App.1971); see also *Breene v. Plaza Tower Association*, 310 N.W.2d 730 (N.D.1981). The cases cited by appellants are basically not in point.

Appellants also rely on the holding in *Thiess v. Island House Association, Inc.*, 311 So.2d 142 (Fla.Dist.Ct.App.1975). In *Thiess,* the owner's association brought suit against apartment owners to enforce assessments under the applicable Florida statutory provision. Appellants, Thiess, bought their unit under a declaration that specified that they would be obligated for 1/73 of the common expenses. Subsequently, an amendment to the declaration was approved without appellants' consent, which changed the proportionate share of the common expenses. The court held that appellants did not join in the execution of the amendment, therefore, they "had a right to rely on the fact that their proportionate obligation to share in the common expenses could not be altered unless they agreed." Id. at 146. This case can ·be distinguished from the present case in that the assessments including increases and special assessments charged against appellants, Dr. and Mrs. Raymond, are not affected by a change in the percentage share of the common ex-

penses. Appellants' proportionate share of the common expenses in the Aquarius building remain in effect as that portion allocated to them in the original Declaration.

The testimony and evidence before this Court does not reveal any Board action changing the ownership interest in the common elements held by appellants. Appellants' 1/74 share per unit in the common elements in the Aquarius remains unchanged from the original recorded Declaration, even though the dollar amount has varied over the course of their ownership. Both the condominium declaration and the bylaws advise appellants of appellee's authority and duty to establish and fix the amount of assessments against each member for each condominium unit owned; and it would seem unreasonable for appellants to assume any amount quoted them or originally assessed would remain unchanged from 1974 to 1981.

■ Finally, appellants cite *Tower House Condominium, Inc. v. Millman,* 410 So.2d 926 (Fla.Dist.Ct.App.1981) for the proposition that a vote of *all* the unit owners is required for the owner's association to purchase additional property to add to the condominium regime. In *Tower House,* the association acquired $400,000.00 of property to be used as an addition to the parking area, which increased such area by 1/3 and changed the number of parking spaces owned by condominium unit owners. The court held that this addition to the common elements was a "material alteration" or "modification" of "common area and of the unit owners' interest in appurtenances to the condominium unit," which required consent of all owners. Id. at 929–30. Based on the foregoing, appellants argue that the purchase of an apartment by appellee for the use of the managers changed appellants' undivided interest in the whole of the building. Appellants further contend that such an act on the part of appellee required unanimous consent to waive the regime and reconstitute a new regime under the Texas Condominium Act. The testimony concerning the purchase of the manager's apartment does not establish that anyone other

than appellee paid the assessment for the apartment. The fact that appellee itself owns one of the apartments does not change the total 2/74 interest in the common elements owned by appellants and does not affect their obligation to contribute their pro rata share toward the common expenses.

■ This Court recently acknowledged the necessity for a greater degree of control over and limitation upon the rights of the individual owner, given the uniqueness of the potential conflicts of condominium living. Condominium unit owners constitute a democratic subsociety, of necessity more restrictive in the use of condominium property than might be acceptable given traditional forms of property ownership. Therefore, each constituent must relinquish some degree of freedom of choice and agree to subordinate some of his traditional ownership rights when he elects this type of ownership experience. See *Board of Directors of By-the-Sea Council of Co-owners, Inc. v. Sondock,* 644 S.W.2d 774, 780–81 (Tex.Civ. App.—Corpus Christi 1982, writ ref'd n.r. e.); *Seagate Condominium Ass'n., Inc. v. Duffy,* 330 So.2d 484, 486 (Fla.Dist.Ct.App. 1976); *Hidden Harbor Estates, Inc. v. Norman,* 309 So.2d 180, 182 (Fla.Dist.Ct.App. 1975).

■ In determining whether the Board had the authority to assess owners for various items and services, it is clear that the Board of Directors of appellee were vested with considerable discretion in exerting managerial and administrative responsibilities, including the privilege to determine the necessary expenses for the development and operation of the condominium project and to assess the owners their pro rata share for such "common expenses." *Association of Unit Owners of the Inn of the Seventh Mountain v. Gruenfeld,* 277 Or. 259, 560 P.2d 641, 644 (1977).

In summary, the standard to be applied in reviewing the action of the Board is "reasonableness." Recognizing only that the Board of Directors of condominiums may not enforce arbitrary and capricious rules, all of the items and services assessed must

be reasonably identified as necessary to accomplish the purpose of creating a uniform plan for the development and operation of the condominium project. See id.; *Ryan v. Baptiste,* 565 S.W.2d 196, 198 (Mo.App.1978)

■ The evidence in the record shows that the operation of the rental pool was a revenue producer. After the direct expenses of operating the rental pool were accounted for, the 1979 figures show that approximately $20,000.00 remains to defray the other expenses of administration, maintenance and repair of the building. Appellants have not established by the evidence that appellee has engaged in any unauthorized function. On review of appellee's actions under the standard of "reasonableness," the operation of a rental pool is reasonably related to the authority granted appellee under the Condominium Declaration and the bylaws and something that the owners could have anticipated. The additional expenses incurred by reason of the rental pool do not conclusively establish that the assessments charged against the appellants are unlawful.

We conclude that the charges included in the judgment, as assessed by the Board of Directors, were within the discretionary powers granted to appellee's Board of Directors in the bylaws, recorded Declaration and statutory law. Points of error numbers one and two are overruled.

Points of error numbers three and four challenge, respectively, the legal and factual sufficiency of the evidence to support the implied findings that deeds to Aquarius condominium apartments 806 and 908 were delivered to appellants. Appellants take the position that appellee has not proved that appellants own the apartments. In this respect, appellants claim the trial court erred in rendering judgment against them and for foreclosure.

As stated previously, in 1973 appellants entered into two separate purchase and earnest money agreements for the purchase of two apartments in the Aquarius Condominium project. Both agreements are signed by appellant, Dr. Raymond, and Mr. Gus Zavaletta, as Executive Vice-President of Zodiac

Corporation. Appellant testified that, through Mr. Zavaletta, he made arrangements to pay off the balance of the purchase price on the apartments. At that time, appellant deposited the balances with an attorney, the Honorable Walter C. Hasse. Appellant testified that he deposited the amounts owing on the apartments on Mr. Hasse's oral assurances that Mr. Hasse "would handle everything" and make sure that there would be no transfer of title "until everything had been completed."

Warranty Deeds to apartments 806 and 908 were executed by the President of the development corporation and Mr. Hasse, as its Secretary, on August 22, 1974. Thereafter, Mr. Hasse forwarded the deeds for recordation in the appropriate records of Cameron County, Texas, on October 15, 1974. Appellant testified initially that the first notice he received from Aquarius were statements showing amounts owed for both apartments. The statements are dated March 1, 1975, and April 1, 1975. Appellant later testified that the first information he received telling him that there had been a closing was a letter from Mr. Hasse dated December 2, 1974. Appellant acknowledged that the letter asked appellant to remit closing costs and stated, "I have your recorded deed and title policy which I will forward on receipt of funds due." Appellant testified that he never reimbursed Mr. Hasse the closing costs, and he never requested the deeds from Mr. Hasse.

Appellants claim they never received the original recorded deeds to the apartments. Appellants also claim they have never had keys to these units in their personal possession. The evidence shows that Mrs. Raymond corresponded with the County Clerk of Cameron County. In a letter from the Clerk dated October 25, 1975, appellants were informed of the record volume and pages of the deeds and that copies would be provided to them for $8.00. Appellant also testified that, at the time of his deposition, he was aware that his attorney had copies of the deeds on file.

It is well established that in order to render a deed effective, it must be delivered into the control of the grantee with the intent of the grantor that it shall become operative as a conveyance. See *Bennett v. Mings,* 535 S.W.2d 408, 409 (Tex. Civ.App.—Texarkana 1976, writ ref'd n.r. e.); *Chandler v. Hartt,* 467 S.W.2d 629, 633–34 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r. e.); *Bussan v. Donald,* 244 S.W.2d 271, 274 (Tex.Civ.App.—Ft. Worth 1951, writ ref'd n.r.e.); see also 19 Tex.Jur.2d, Deeds, 81 (1960). Whether there has been in fact a delivery is for the trier of the facts, while the question of what constitutes a delivery is one of law. *Ragland v. Kelner,* 148 Tex. 132, 221 S.W.2d 357, 359 (Tex.1949); *McDaniel v. Carruth,* 637 S.W.2d 498, 505 (Tex.App.—Corpus Christi 1982, no writ). The intention of the grantor to deliver the deed is determinative of whether there has been delivery. *Taylor v. Sanford,* 108 Tex. 340, 193 S.W. 661 (Tex.1917); *DeGrassi v. DeGrassi,* 533 S.W.2d 81, 86 (Tex.Civ.App.—Amarillo 1976, writ ref'd n.r.e.); *Hunter v. Meshack,* 471 S.W.2d 155, 157 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). To consummate a delivery, the deed must be placed in the hands of the grantee, or within his control. *Jones v. Young,* 539 S.W.2d 901, 904 (Tex.Civ.App.—Texarkana 1976, writ ref'd n.r.e.); *Chasteen v. Miller,* 349 S.W.2d 772 (Tex.Civ.App.—San Antonio 1961, writ ref'd n.r.e.). Generally, the filing of a deed for recordation establishes a rebuttable presumption of delivery. *Austin Lake Estates Recreation Club, Inc. v. Gilliam,* 493 S.W.2d 343, 347–48 (Tex.Civ.App.—Austin 1973, writ ref'd n.r.e.); *Hunter v. Meshack,* 471 S.W.2d 155, 157 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). The recording of the deed is prima facie evidence of delivery by the grantor as well as of acceptance by the grantee. *McAnally v. Texas Company,* 124 Tex. 196, 76 S.W.2d 997, 1000 (1934); *Sorsby v. State of Texas,* 624 S.W.2d 227, 234 (Tex.Civ.App.—Houston [1st Dist.] 1981, no writ); *Chandler v. Hartt,* 467 S.W.2d 629, 633 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.).

Furthermore, any words or acts of the grantee to show an intention to receive the title are admissible to prove acceptance. 19 Tex.Jur.2d, Deeds, 82 (1960). In the present case, even though the deeds were not filed for record directly by appellants, the evidence supports the implied finding that the deeds were filed by appellant's attorney, Mr. Hasse, pursuant to their request.

In summary, there is ample evidence to support a finding that appellants are the owners of both apartments in the Aquarius. We take note that the appellants have not, at any time during the eight-year period past, attempted to recover the purchase money they paid on both units. Appellants' counterclaim for damages to the apartments is clearly based on an ownership interest in the subject apartments. Appellants secured a final judgment awarding an amount for damages to the apartments, and no appeal from that portion of the judgment has been brought before this Court for review. Points of error numbers three and four are overruled.

Finally, in their fifth point of error, appellants complain that the trial court erred in admitting the testimony of appellee's secretary in regard to the "reassessment" in the sum of $1,027.00 because the corporate records concerning the reassessment were not produced. The objection is that the testimony is hearsay in the absence of corporate records and, as such, inadmissible. The trial court initially overruled the hearsay objection, and, upon request by appellants, granted a running objection to any assessment testimony along that line.

We agree with appellee's position that the passage of the resolution as an official action by the Board is not an out-of-court statement offered for the truth of the matter stated. Mrs. Lancaster testified that she was present at the meeting in April of 1976 when that particular assessment was approved by resolution. As a witness to the event, she may testify to such matters within her personal knowledge.

Appellant's second ground for objection to the "re-assessment" testimony

is that the written minutes of the Board meetings are the best evidence showing that appellee or the Board did pass such resolutions and put in motion the assessments the Secretary testified about. It is well settled the Best Evidence rule applies only where the purpose of the evidence is to prove the contents of the writing. *Prudential Insurance Company of America, Inc.,* 572 S.W.2d 379, 380 (Tex.Civ.App.—Houston [14th Dist.] 1978, no writ); *Clement v. Nacol,* 542 S.W.2d 265, 266 (Tex.Civ.App.—Ft. Worth 1976, no writ); *Fechtel v. Gatewood,* 470 S.W.2d 293, 295 (Tex.Civ.App.—Tyler 1971, writ ref'd n.r.e.). See also McCormick and Ray, Texas Practice 2d—Evidence § 1566 (1956). In the present case, the actual terms of the corporate minutes do not appear to be material to the issue. The real issue was whether a resolution or some kind of action by appellee or the Board officiated the "re-assessment" in question. See *District Trustees of Campbellton Consolidated Common School District No. 16 v. Pleasanton Independent School District,* 362 S.W.2d 122, 126 (Tex.Civ.App.—San Antonio 1962, writ ref'd n.r.e.). Even if an explanation for the absence of the original corporate minutes of the meetings documenting the assessments are required, counsel for appellee explained to the satisfaction of the trial court the problem of accounting for the document in question. It is a rule of long standing that trial judges are presumed to disregard evidence which is nonprobative, prejudicial or otherwise unfit. Therefore, even if there was error, it was harmless. Tex.R.Civ.P., R. 434. We hold that there was sufficient admissible evidence to support the judgment. See *Merrell v. Merrell,* 527 S.W.2d 250, 254 (Tex.Civ.App.—Tyler 1975, writ ref'd n.r.e.); *Yzaguirre v. State,* 427 S.W.2d 687, 693–94 (Tex.Civ.App.—Corpus Christi 1968, no writ). Point of error number five is overruled.

The judgment of the trial court is affirmed.