54 F.3d 787
 75 A.F.T.R.2d 95-2255, 95-1 USTC P 50,276
 NOTICE: Although citation of unpublished opinions remains unfavored, unpublished opinions may now be cited if the opinion has persuasive value on a material issue, and a copy is attached to the citing document or, if cited in oral argument, copies are furnished to the Court and all parties. See General Order of November 29, 1993, suspending 10th Cir. Rule 36.3 until December 31, 1995, or further order.
 ESTATE OF Robert E. SYMPSON, Deceased; Elizabeth C. Sympson,
Personal Representative; and Elizabeth C. Sympson,
individually, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE, Respondent-Appellee.
 No. 94-9006.
 United States Court of Appeals, Tenth Circuit.
 May 11, 1995.
 
 Before KELLY and SETH, Circuit Judges, and KANE,* District Judge.
 ORDER AND JUDGMENT**
 PAUL KELLY, JR., Circuit Judge.
 
 
 1
 After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1.9. The case is therefore ordered submitted without oral argument.
 
 
 2
 Plaintiffs are the estate of Robert E. Sympson and his widow, Elizabeth Sympson, individually and in her capacity as personal representative. Plaintiffs appeal from the Tax Court's decision that Mrs. Sympson was ineligible for relief from tax liability under the "innocent spouse" provision set forth at 26 U.S.C. Sec. 6013(e), and further denying plaintiffs a tax deduction in 1987 for what plaintiffs characterized as a restitution payment. We affirm in part, reverse in part, and remand for further proceedings.
 
 
 3
 During the years 1982 through 1987, while employed to handle business affairs for Olga Roderick, a wealthy and elderly woman, Mr. Sympson embezzled and later failed to report $898,642 in income. Mr. Sympson died in 1991. Later that year, the Internal Revenue Service issued notices of deficiency for the years 1982 through 1987. Mrs. Sympson petitioned the Tax Court for relief.
 
 
 4
 The Tax Court determined that Mrs. Sympson was not entitled to innocent spouse relief because she failed to prove that it would be inequitable to hold her liable for the deficiency in taxes. The Tax Court also held that plaintiffs were not entitled to a deduction in 1987 based on the delivery of certain deeds to Mrs. Roderick. We first address the innocent spouse issue.
 
 
 5
 Under [Internal Revenue] Code section 6013(e)(1), a spouse may be relieved of joint tax liability for an understatement if: (a) a joint return was filed; (b) on the return there is a substantial understatement of tax which is attributable to the grossly erroneous items of one spouse; (c) the other spouse established that in signing the return he or she did not know and had no reason to know that there was a substantial understatement; and (d) taking into account all the facts and circumstances, it is inequitable to hold the spouse liable for the deficiency in tax attributable to such substantial understatements. 20 U.S.C. Sec. 6013(e)(1)(1980).
 
 
 6
 Day v. Commissioner, 975 F.2d 534, 539 (8th Cir. 1992). The Commissioner concedes that the first two requirements for relief have been met. Mrs. Sympson, however, must prove that she satisfies each of the requirements of Sec. 6013(e) in order to obtain relief. See Stevens v. Commissioner, 872 F.2d 1499, 1504 (11th Cir. 1989). Thus, even if Mrs. Sympson had no knowledge of the understatements, a finding not made by the Tax Court, she still bears the burden of establishing that it would be inequitable for her to be held liable for this additional tax. See Estate of Krock v. Commissioner, 93 T.C. 672, 677 (1989). The Tax Court did not address the issue of Mrs. Sympson's knowledge, relying instead on its finding that it would not be inequitable to hold her liable for the tax deficiencies. We address the equity issue first.
 
 
 7
 In analyzing the equities of cases such as these, we are guided by Sec. 1.6013-5(b) of the Income Tax Regulations, which provides in relevant part:
 
 
 8
 (b) Inequitable defined. Whether it is inequitable to hold a person liable for the deficiency in tax, within the meaning of paragraph (a)(4) of this section, is to be determined on the basis of all the facts and circumstances. In making such a determination a factor to be considered is whether the person seeking relief significantly benefited, directly or indirectly, from the items omitted from gross income. However, normal support is not a significant "benefit" for purposes of this determination.
 
 
 9
 26 C.F.R. Sec. 1.6013-5(b) (emphasis added). "Normal support is measured by the circumstances of the parties[,]" Flynn v. Commissioner, 93 T.C. 355, 367 (1989), and is based on each family's standard of living, Sanders v. United States, 509 F.2d 162, 168 (5th Cir. 1975). The extent to which the petitioning spouse received benefit from the omitted income is only one factor in the equity determination. See, e.g., Krock, 93 T.C. at 677. "As we read the statute, significant benefit is not determinative if all other facts and circumstances make the imposition of the tax inequitable." Dakil v. United States, 496 F.2d 431, 433 (10th Cir. 1974).
 
 
 10
 The Tax Court concluded that the Sympsons had "used the unreported income to finance and continue an extravagant and lavish lifestyle and living accommodations," R. Vol. I, doc. 16 at 25, and that it was thus not inequitable to hold Mrs. Sympson liable for the deficiency, id. at 26. The Tax Court's determination to deny relief under Sec. 6013(e) is reviewed for clear error. Pietromonaco v. Commissioner, 3 F.3d 1342, 1344 (9th Cir. 1993). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395 (1948).
 
 
 11
 As evidence to support its conclusion, the Tax Court noted the Sympsons' purchase in 1984 of a 25-acre ranch valued in 1986 at $500,000, a purchase which doubled their residential investment and tripled their mortgage payments. In 1986, the Sympsons purchased two Jaguar automobiles for $25,000 each, while continuing to own a 1983 Jeep Wagoneer and a 1968 Oldsmobile convertible. In 1987, the Sympsons built a polo field at their ranch at a cost of between $50,000 and $75,000. During the relevant years, the Sympsons owned horses and employed a maid. Further, Mr. Sympson had given Mrs. Sympson a $3,000 fur coat and an $8,000 diamond ring during this period.
 
 
 12
 In contrast to this evidence, Mrs. Sympson testified that, while the family lifestyle gradually improved each year throughout the marriage, including the years of defalcation, there was no dramatic change. R. Vol. II at 115. Importantly, there was evidence that the Sympsons had sufficient cash flow from sources other than the unreported income to more than cover their family expenditures during this period.
 
 
 13
 The purchase of the ranch was accomplished through the use of equity from the sale of their prior home plus a mortgage. The two Jaguars, while ostentatious, were both used and were acquired through the trade-in of the Sympsons' two Cadillacs and with funds secured after another property was refinanced.
 
 
 14
 The Tax Court observed that the Sympsons "owned a number of horses." The evidence, however, was that the Sympsons never owned more than two horses during this period and that the family had owned two horses since the early seventies for use by their children. R. Vol. II at 116-17. Although the Tax Court mentions a vacation in the Bahamas and the purchase of property there, there is no evidence as to when these events occurred.
 
 
 15
 We see the touchstone of this case to be the statutory intent to relieve an innocent spouse of tax liability in cases of inequity. Here, there is substantial evidence that the lifestyle of the Sympsons during this period did not change. Even assuming that Mrs. Sympson had benefitted substantially, a fact totally unsupported by the evidence, that is only a factor, and not necessarily a dispositive factor, especially when considered against the fact that Mrs. Sympson was forced into bankruptcy after her husband's death, and nothing remains of the fruits of Mr. Sympson's fraud. All of the properties acquired with his ill-gotten gains were turned over to the Rodericks. Because a determination of equity is based on all of the facts and circumstances, we hold that under these circumstances, it would be inequitable as well as unconscionable to hold Mrs. Sympson liable for these deficiencies. See Pietromonaco, 3 F.3d at 1348 (petitioner's penury a factor in awarding relief); Dakil, 496 F.2d at 433 (same). We are, thus, left with the definite and firm conviction that the Tax Court's conclusion to the contrary was mistaken.
 
 
 16
 As noted above, however, in order to obtain innocent spouse relief, a petitioner must satisfy all elements of Sec. 6013(e). See Stevens, 872 F.2d at 1504. Thus, Mrs. Sympson must also demonstrate that she neither knew nor had reason to know of the understatement of income. Because of the factual nature of this inquiry, and because the Tax Court made no findings on this issue, we remand for further fact finding on the question of Mrs. Sympson's knowledge.
 
 
 17
 Turning to the second issue on appeal, the Tax Court was correct to refuse to allow plaintiffs a deduction from 1987 taxes for what they characterize as restitution to Mrs. Roderick. After Mrs. Roderick discovered Mr. Sympson's perfidy, the Sympsons were required to deliver deeds to certain real property owned by them to Mrs. Roderick. Plaintiffs argue that this transaction is deductible on their 1987 taxes as a restitution payment.
 
 
 18
 Restitution payments are deductible pursuant to Sec. 165(c)(2) of the Internal Revenue Code, "which permits an individual to deduct any uncompensated loss sustained during the taxable year incurred in any transaction entered into for profit." Stephens v. Commissioner, 905 F.2d 667, 670, (2d Cir. 1990). "[T]axpayers who repay embezzled funds are ordinarily entitled to a deduction in the year in which the funds are repaid." Id. at 671. It is plaintiffs' burden to establish that this transaction was a deductible loss. See Burnet v. Houston, 283 U.S. 223, 227 (1931). That, in turn, depends upon whether the delivery of the deeds was an actual conveyance or was intended by the grantors (the Sympsons) to be merely a security device to guarantee their eventual repayment of the embezzled funds. Under Texas law, whether there has been a delivery of deeds sufficient to convey title to property is a question of fact. See Raymond v. Aquarius Condominium Owners Assn'n, Inc., 662 S.W.2d 82, 91 (Tex. Ct. App. 1983). Our review, therefore, is for clear error.
 
 
 19
 In order for the delivery of a deed to effectuate a transfer of property, the seller must intend that such delivery operate as a conveyance. See Hart v. Rogers, 527 S.W.2d 230, 234 (Tex. Civ. App. 1975); Raymond, 662 S.W.2d at 91. Here, there is evidence that the Sympsons intended the delivery of deeds to Mrs. Roderick to act only as security for their obligation to repay her the monies embezzled by Mr. Sympson.
 
 
 20
 Mrs. Sympson testified at the trial that the deeds were to "go into [Mrs. Roderick's attorney's] safe as ... a guarantee that [the fraud action pending in state court would] be straightened out." R. Vol. II at 125. Mr. Messina, the Sympsons' bankruptcy attorney, testified that his clients had signed the deeds based on Mrs. Roderick's attorney's promise to "hold these deeds as security until you can pay back the loan." Id. at 175. Further, the Sympsons treated the properties as their assets for purposes of their 1988 income tax return, id. at 189, and later noted in their bankruptcy statement of assets and liabilities that the properties were "deeded sometime in August, September and November, 1987, to Olga B. Roderick as security for a purported debt." R. Vol. I, doc. 9, Jt. Ex. 9-I (Vol. I, Stip. of Facts) at 9. The conclusion of the Tax Court, therefore, that the intent of the Sympsons was merely to pledge the property to Mrs. Roderick as a security interest is not clearly erroneous, and plaintiffs are not entitled to the deduction.
 
 
 21
 The judgment of the United States Tax Court is affirmed in part and reversed in part. This case is remanded for further proceedings consistent herewith.
 
 
 
 *
 Honorable John L. Kane, Jr., Senior District Judge, United States District Court for the District of Colorado, sitting by designation
 
 
 **
 This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of the court's General Order filed November 29, 1993. 151 F.R.D. 470