**Opinion issued December 29, 2020**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-19-00114-CV

————————————

**J. RAY RILEY, Appellant**

**V.**

**NICK C. CARIDAS, DAVID L. HARSHBARGER, ROBERTO H. VAN DE WYNGARD, BRENDA B. RUBENSTEIN, YUSHA ABOUHALKAH, REBECCA JOYCE FAULCONER, GAIL ANN PRATHER, GREG CLARK, AND THE GALVESTONIAN CONDOMINIUM ASSOCIATION, INC., Appellees**

On Appeal from the 281st District Court
Harris County, Texas
Trial Court Case No. 2016-04629

# MEMORANDUM OPINION

This case concerns a condominium owner's dispute with the condominium association, its board of directors, and its manager regarding short-term rental of individual units. Appellant J. Ray Riley alleged that the board of the Galvestonian Condominium Association ("the Association") had enacted policies that violated the Galvestonian's Declaration of Condominium (the "Galvestonian's Declaration" or the "Declaration"), made it unprofitable for him to rent his unit, and created a monopoly in short-term rentals managed by the Association. He asserted various statutory and common-law claims, seeking, among other things, declaratory judgment that multiple policies violated the Galvestonian's Declaration, monetary damages, attorney's fees, and costs. The Association counterclaimed for attorney's fees.

Before trial, the court granted partial summary judgment in Riley's favor, declaring that two provisions of the Association's rental policy violated the Declaration: one policy limited participation in the Association's rental program and another surcharged owners who rented outside the program. After a jury trial, the court entered final declaratory judgment in accordance with the earlier partial summary judgment and the jury verdict. The court otherwise rendered judgment that all parties take nothing.

Riley, the Association, and the individual defendants appealed. Riley raised nine issues on appeal that generally challenge: (1) the court's failure to award attorney's fees and costs (issues 1-4); (2) the court's failure to award monetary damages for housekeeping surcharges (issue 5); and (3) two additional Association policies on which the jury found against him (issues 6-9). In its cross-appeal, the Association raised three issues challenging the partial summary judgment (issues 1 and 2) and the court's denial of its requested attorney fees (issue 3).

We affirm in part and reverse in part.

## Background

### I. The Galvestonian

In 1983, Galveston East Condo, Inc., d/b/a The Galvestonian, established a condominium regime by enacting "The Galvestonian Declaration of Condominium," (the "Galvestonian's Declaration" or the "Declaration"). This governing document provided that the Galvestonian Condominium Association ("the Association"), a nonprofit corporation incorporated in 1983, would administer the condominium and had "the right, power and obligation to provide for the maintenance, repair, replacement, administration and operation of the Condominium . . . ." Each owner of a unit in the condominium was a member of the Association. The Declaration provided for the owners to share in the expenses of administering and maintaining the condominium, in proportion to their ownership, by common

expense charges and special assessments. Both the Declaration and the Association's bylaws provided for annual and special meetings, which required that the members receive prior notice and the opportunity to attend.

Relevant to this appeal, the Declaration provided: "Nothing herein shall authorize the Board of Directors to furnish services to any person primarily for the benefit or convenience of any Owner or Owners or any occupant or occupants of any Residence other than services customarily rendered to all Owners and occupants of Residences." The Declaration also provided that each owner's rights to use the residences, common elements, or limited common elements extended to the owner's guests and tenants.

## II.    The Rental Program

The Association maintains a turnkey rental program for owners who want to offer their units for short-term rentals. Participating owners execute an agreement permitting the Association to act on their behalf, and the Association markets, schedules, and manages the rentals in exchange for 40% of the rents collected. From about 1990 until 2011, the rental program was open to all owners who chose to participate, but in 2011, the Association limited participation to 40% of the condominium units.

## III.  Riley's Condominium Unit

In 1989, Riley, an attorney, purchased unit 107 in The Galvestonian Condominium. The following year, he married Chelita. The Rileys used their unit most weekends until sometime between 2000 and 2005, when they moved from Houston to Johnson City, Texas. Riley then enrolled in the rental program, but by 2009 he concluded that the rental program was not covering his expenses. The Rileys tried to sell the unit, but they were unsuccessful. In April 2011, they sought to reenter the rental program, and they learned there was a cap on participation. They were added to the waiting list. Unable to rejoin the rental program, Chelita began marketing and renting the unit online in order to cover the increased assessments and taxes. Chelita testified at trial that she wanted to demonstrate the investment value of the unit in order to make it more attractive to potential buyers.

Riley and several others offered their units for rent outside the rental program and sometimes at rates lower than those charged by the rental program. Throughout 2014, the Association board discussed concerns that arose from short-term rentals outside the rental program. These concerns included:

(1)   damage to the Galvestonian's reputation if the independently-rented units did not meet the same standards as the units in the rental program;

(2)   independently-renting unit owners reaping benefits of the rental program without paying a fair share of the expenses;

(3)     lack of adequate insurance for independently-rented units and the potential for lien imposition in the future;

(4)     lack of identification and contact information for people renting outside the rental program; and

(5)     lower rates charged by independently-renting unit owners that undercut the units in the rental program.

In addition, the Association later became concerned about whether the independently-renting unit owners were properly paying hotel taxes. The Association internally acknowledged that all unit owners had the right to enter into short-term rentals of their units and that there was no official reason to limit the rental program to 40% participation. At meetings, including private board workshops, in 2014 and 2015, the Association's board discussed proposals to impose additional fees on owners renting outside the rental program, particularly to cover amenities such as front desk staff, keys, housekeeping, and beach supplies.

## IV.   Doubled Housekeeping Fees

In January 2015, the Association published a revised schedule of service charges for various housekeeping services based on the size of the unit. In addition, the schedule indicated that the rates were doubled in certain circumstances, including "Non-rental program unit same day turnover for Guest of Owner/Owner."[1] At trial,

---

[1]     This text box appeared at the bottom of the schedule of service charges:

Riley's undisputed testimony was that he paid $320 in doubled housekeeping fees under this schedule because he was not part of the rental program.

## V. The 2015 Rental Rules

In November 2015, Janelle Straach, who also owned a unit at the Galvestonian, forwarded to Chelita an email, which indicated that the Association's board was planning to impose new, additional nightly and resort fees on owners who rented their units outside the rental program. Riley believed that the additional fees would make renting his unit unprofitable and "put us out of business." Around the same time, Riley became aware that the Association board had been holding "workshop" meetings that were not open to the members.

On December 7, 2015, Riley sent a 12-page email to the board describing his concerns. He did not receive a response. Five days after Riley sent the email, the board met and approved the "Rules and Regulations relating to the Rental of Residences" (the "2015 rental rules"). The 2015 rental rules specifically addressed owners who rent their condominium units independent of the rental program. Rule 1.02 of the 2015 rental rules stated that the purpose of these rules was to "achieve

---

| Rush Service | Rate Doubled |
| --- | --- |
| • Less than 24 hour notice to ready the unit for arrival | |
| • Non-rental program unit same day turnover for Guest of Owner/Owner | |
| • Rental Program Owner with late check out with a pending arrival | |

greater parity and equity" among owners who rent their condominium units through the rental program and independently, to ensure that the owner who rents independently "pays fees to the Association to cover administrative, operating and maintenance costs (such as, by way of example and not in limitation, front desk services, continental breakfasts, beach towels, cleaning and maintaining Common Areas and recreational areas, recreational activities, trash disposal, utility costs, personnel expenses, marketing expenses, information technology and internet services, professional expenses, and general wear and tear) in the same manner as Owners who rent their Residences through the Program," and to give the Association "a means of identifying persons who have a right to be on the premises, as well as a right to use the recreational areas and other facilities." The 2015 rental rules provided for the following: (1) prohibited renting to a person younger than 25 years old; (2) required disclosure of information about renters and their vehicles to the Association; (3) prohibited smoking in a residence or on a residence balcony; (4) prohibited pets; (5) limited the number of people who could occupy a rented condominium unit according to the number of bedrooms; (6) required payment of a nightly resort fee; (7) required owners renting independent of the rental program to pay a nightly fee to cover administrative, operational, and maintenance costs that ranged from $45 to $90 per night depending on the size of the condominium unit;

(8) payment of taxes including hotel occupancy taxes; and (9) authorized the Association to impose fines for noncompliance with the rules.

## VI.    Riley's suit and the Association's counterclaims

In January 2016, Riley filed suit against the Association, the individual members of the Association's board of directors, and the Galvestonian's managing agent, Greg Clark. Riley sought appointment of a receiver and alleged causes of action for: (1) violations of the Texas Free Enterprise and Antitrust Act; (2) violations of the Texas Condominium Act and the Texas Uniform Condominium Act; (3) breach of restrictive covenants in the Declaration, which Riley also pleaded were of contract; (4) breach of the Association's bylaws; (5) civil conspiracy; (6) breach of fiduciary duties; and (7) negligence and mismanagement. These causes of action arose from the disputes about the rental program, Association meetings, the composition of the board of directors, and meetings of the board of directors. Riley sought an injunction to prevent enforcement of the December 2015 rental program rules and implementation of the fee schedules that charged owners renting independent of the rental program for nightly rental, resort, and rush turnaround housekeeping fees. He also sought statutory penalties, monetary damages, and attorney's fees and costs.

The Association and the individual defendants filed a counterclaim for reasonable attorney's fees and costs of litigation for successfully defending Riley's

9

claims for violations of the Texas Condominium Act and for breach of restrictive covenants in the Declaration and the bylaws. They also pleaded for attorney's fees under the Texas Free Enterprise and Antitrust Act, asserting that Riley's antitrust causes of action were groundless and brought in bad faith or for the purpose of harassment.

## VII. Pretrial partial summary judgment

Before trial, both sides filed traditional motions for partial summary judgment regarding certain rental program rules. Riley argued that the Association, the board of directors, and the manager lacked authority under the law, the Declaration, and the Association's bylaws to: (1) limit participation in the rental program; (2) impose additional fees only on the unit owners who rented their units outside the rental program; (3) deny the use of amenities to Riley's rental guests unless additional nightly rental and resort fees are paid; and (4) restrict who may rent from Riley in competition with the rental program. The defendants argued that the fees and rental rules were not improper because the Declaration authorized the Association to administer the Galvestonian "as reasonably necessary or appropriate to maintain and operate the Condominium."

The trial court granted partial summary judgment in favor of Riley, holding that the Association's limitation on the number of units that could participate in its rental program violated the Declaration and that the Association was not authorized

to impose additional fees on owners who rented their units outside the rental program.

## VIII. Trial

During trial, Riley nonsuited the breach of restrictive covenant claims against the eight individual defendants, and the trial court granted directed verdict in favor of the Association on other causes of action. After seven days of testimony, including testimony about attorney's fees, the remaining claims were submitted to the jury. The court's charge asked if specific provisions of the 2015 rental rules were "arbitrary, capricious, or discriminatory." The jury found that only one provision— "charging an independent rental owner more than a Rental Program owner for rush housekeeping services provided by the Galvestonian"—was arbitrary, capricious, or discriminatory. The jury found that the remaining provisions were not arbitrary, capricious, or discriminatory, that Riley incurred no damages as a result of the 40% limitation on participation in the rental program, and that the Galvestonian did not negligently cause harm to Riley related to the rental program losses.

The jury was also asked to determine the amount of attorney's fees for Riley and for the Galvestonian. The jury found that "a reasonable fee, if any, for the necessary attorney services" for Riley for "services related to breach of contract/restrictive covenants through trial and the completion of proceedings in the trial court" was $228,750. The jury found that "a reasonable fee, if any, for the

necessary services of The Galvestonian's attorneys" was $76,175 for "services related to antitrust for the representation through trial and the completion of proceedings in the trial court," and $42,117 for "services related to restricted [sic] covenants through trial and the completion of proceedings in the trial court."

## IX.    Post-verdict and post-judgment motions

Riley filed a motion to disregard certain jury findings and for entry of judgment. Riley argued that he was entitled to attorney's fees as a prevailing party on his cause of action for breach of the restrictive covenants because he prevailed in the pretrial partial summary judgment. He asserted that he, not the defendants, was the prevailing party and entitled to attorney's fees under section 5.006 and section 82.262(b) of the Texas Property Code. Riley asked the trial court to disregard the jury findings on attorney's fees for the defendants under the Texas Free Enterprise and Antitrust Act because they did not show that his antitrust claims were groundless and brought in bad faith or for the purpose of harassment. He also asked the court to disregard the jury's finding that the Association's rule prohibiting renting to people under the age of 25 was not arbitrary, capricious, or discriminatory because that rule conflicts with the Declaration.

The defendants filed a motion for judgment notwithstanding the verdict. They argued that there was no evidence or insufficient evidence to support the jury's verdict that $228,750 was a reasonable and necessary amount of attorney's fees for

Riley related to his cause of action for breach of restrictive covenants or contract. They argued that the trial testimony about Riley's and his wife Chelita's fees did not satisfy the proof necessary for a lodestar determination of reasonable and necessary fees, particularly in the absence of any contemporaneous billing records or documents evidencing the nature of the work, the time spent on various activities, and who completed which tasks.

The defendants argued that Riley was not a prevailing party because he recovered no actual damages and because the undisputed evidence at trial showed that the Association had voluntarily eliminated the 40% limitation on participation in the rental program and the doubled housekeeping fees for rush turnaround service during the pendency of the case. The Association also declined to implement the rules imposing nightly and resort fees on outside renters while the case was pending. Finally, they argued that because Riley nonsuited his claims against the individual defendants after a motion for directed verdict during trial, the individual defendants were the prevailing parties on the breach of restrictive covenant claims and entitled to recover their attorney's fees.

## X. Final judgment

In its final judgment, the trial court declared:

2.     A Rental Program that is not available to all condominium owners violates The Galvestonian Declaration of Condominium.

13

3. Imposing fees on owners who rent outside the Rental Program violates the Galvestonian Declaration of Condominium.

4. The following provisions of the Galvestonian's Proposed Rules and Regulations are **not** arbitrary, capricious, or discriminatory:

    (a) An independent rental owner shall not rent to a person under the age of 25 years.

    (b) Smoking is prohibited in an independent rental owner's unit (including balcony).

    (c) Pets are not permitted in an independent rental owner's unit.

    (d) Limiting the number of guests allowed in an independent rental owner's unit.

    (e) Requiring the name and contact information of the person renting an independent rental owner's unit.

    (f) The Fining Policy for the Galvestonian Condominium Association, which states: "this fining policy shall not apply to owners for violations committed by persons renting a unit through the Rental Program."

5. The following provision **is arbitrary, capricious, o[r] discriminatory**:

    (a) Charging an independent rental owner more than a Rental Program owner for rush housekeeping services provided by the Galvestonian.

The court also rendered judgment that Riley take nothing on any of his causes of action, including his claim for attorney's fees. The court ordered that the Galvestonian recover nothing from Riley on its claim for attorney's fees. All other requests for relief were denied.

14

Riley filed a motion to modify the judgment asking the court to award attorney's fees, costs, and $320 in damages for excessive housekeeping fees. The trial court denied the motion to modify.

**Analysis**

Both Riley and the defendants appealed, and both the appeal and cross-appeal include issues that can generally be characterized as issues affecting the merits of Riley's causes of action and issues pertaining to attorney's fees. Because fee-shifting statutes often require that a party be a prevailing party in order to recover attorney's fees, we will address the issues relevant to the merits of Riley's causes of action first, and then we will address the parties' issues pertaining to attorney's fees.

## I.      Two rental rules violated the Declaration (the Association's issues 1 & 2)

In its first two issues, the Association argued that the trial court erred by granting partial summary judgment that (1) the Association's limitation on the number of units that could participate in its rental program violated the Declaration, and (2) the Association was not authorized to impose additional fees on owners who rented their units outside the rental program.

### A.      Standards of Review

We review de novo both a trial court's summary judgment and its interpretation of a restrictive covenant. *Lujan v. Navistar*, *Inc.*, 555 S.W.3d 79, 84 (Tex. 2018) (summary judgment); *Tarr v. Timberwood Park Owners Ass'n, Inc.*,

15

556 S.W.3d 274, 279 (Tex. 2018) (restrictive covenant); *Duncan v. Dominion Estates Homeowners Ass'n*, No. 01-09-01086-CV, 2011 WL 3505298, at *5–6 (Tex. App.—Houston [1st Dist.] Aug. 11, 2011, no pet.) (mem. op.) (both). When reviewing a traditional summary judgment, we must determine whether the movant showed that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Lujan*, 555 S.W.3d at 84. When both sides move for summary judgment, and the trial court grants one motion and denies the other, a reviewing court must render the judgment the trial court should have rendered. *Lancer Ins. Co. v. Garcia Holiday Tours*, 345 S.W.3d 50, 59 (Tex. 2011).

Restrictive covenants are treated as valid contracts and construed in accordance with general rules of contract construction. *Tarr*, 556 S.W.3d at 279; *Duncan*, 2011 WL 3505298, at *5–6; *see* TEX. PROP. CODE § 202.001(4) (defining restrictive covenant). "Whether a restrictive covenant is ambiguous is a question of law for the court to decide by looking at 'the covenants as a whole in light of the circumstances present when the parties entered the agreement.'" *Tarr*, 556 S.W.3d at 279 (quoting *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998)). Covenants are ambiguous when they are susceptible to more than one reasonable interpretation, and they are unambiguous when they can be given a definite or certain legal meaning. *Tarr*, 556 S.W.3d at 279. Mere disagreement over the interpretation of a

16

restrictive covenant does not render it ambiguous. *Id.*; *Uptegraph v. Sandalwood Civic Club*, 312 S.W.3d 918, 926 (Tex. App.—Houston [1st Dist.] 2010, no pet.).

Our primary concern when construing a restrictive covenant is to give effect to the objective intent of the drafters of the restrictive covenant as expressed by the language used. *Tarr*, 556 S.W.3d at 280; *see Duncan*, 2011 WL 3505298, at *5–6. We examine the restrictive covenant as a whole and give the words their common meaning at the time the instrument was written. *Tarr*, 556 S.W.3d at 280; *Duncan*, 2011 WL 3505298, at *5–6. "A restrictive covenant shall be liberally construed to give effect to its purposes and intent." TEX. PROP. CODE § 202.003(a). However, a court should not construe a covenant to nullify or enlarge a restrictive covenant; "[n]o construction, no matter how liberal, can construe a property restriction into existence when the covenant is silent as to that limitation." *Tarr*, 556 S.W.3d at 285.

**B.**    **A rental program that is not available to all condominium owners violates the Declaration.**

In its first issue, the Association argues that the trial court erred by ruling that the 40% cap on membership in the rental program violated the Declaration. In the trial court, Riley moved for summary judgment on the grounds that the rule limiting participation in the rental program conflicted with the Declaration. This was a pure question of law requiring the court to construe the Declaration and determine whether the rental rules were consistent with or contrary to it. The Association did

not move for summary judgment regarding the cap on the rental program.[2] On appeal, as in his motion for partial summary judgment, Riley argued that section 3.8 of the Declaration prohibits discrimination in the provision of services to owners and the rental rules are, therefore, prohibited by the Declaration.

Section 1.01 of the contested rental rules adopted in December 2015 include the limitation on participation in the rental program: "The number of Residences included in the Program at any given time is capped at forty percent (40%) by category of Residences." The 2015 rental rules also provided that "[i]n the event of a conflict between a provision in the Declaration and a provision in these Rules and Regulations relating to the Rental of Residences, the provision in the Declaration shall control."

The Association argues that it has general authority to adopt the rental rules. Section 2.5 of the Declaration authorizes the Association to adopt rules "for use of the Common Elements, the Limited Common Elements, the Parking Spaces, and the Residences as are necessary or desirable in the judgment of the Condominium

---

[2] On appeal, the Association argues that the trial court erred by granting summary judgment because it presented evidence that the rule was reasonable and not arbitrary, capricious, or discriminatory. *See* TEX. PROP. CODE § 202.004(a) ("An exercise of discretionary authority by a property owners' association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory."). But because this is a question of construction of the Declaration, we do not consider the evidence the Association relies on. It is a pure question of law, not a question of fact.

Association for the operation of the condominium." However, these rules may not "conflict with the provisions of th[e] Declaration." Section 3.1, "Authority to Manage" provided that the Association "shall have the right, power, and obligation to provide for the maintenance, repair, replacement, administration and operation of the Condominium . . . as provided in this Declaration, the By-Laws and the Rules and Regulations."[3]

The specific responsibilities of the Association were more fully enumerated in section 3.8, which concerns the administration of the Condominium, and it provides that the Association will manage and pay for "out of the Common Expense Fund":

(a)     utility services;

(b)     insurance;

(c)     the services of a managing agent and other necessary staff;

(d)     supplies, tools, and equipment "reasonably required" for maintenance, operation, and enjoyment of the Condominium;

(e)     cleaning, maintenance, repair, reconstruction, and replacement of the common elements;

(f)     trash removal; and

---

[3]     It authorized the board of directors to "enter into such contracts and agreements concerning the Condominium as a whole, the Common Elements, or the Building," as the board deemed "reasonably necessary or appropriate to maintain and operate the Condominium as a viable residential Condominium Regime, including, without limitation, the right to grant utility and other easements for such uses as the Board of Directors deems appropriate."

(g)     costs of bookkeeping, accounting, bonds, and taxes.

Section 3.8 prohibits the Association from furnishing certain services to some but not all owners:

> Nothing herein shall authorize the Board of Directors to furnish services to any person primarily for the benefit or convenience of any Owner or Owners or any occupant or occupants of any Residence other than the services customarily rendered to all Owners and occupants of Residences. The Board of Directors shall have the exclusive right and obligation to contract for all good, services and insurance in connection with the administration of the Condominium, and all payments therefor shall be made from the Common Expense Fund.

The 2015 rental rules authorized a turnkey rental program to be capped at 40% participation. A plain reading of this provision indicates that the marketing and rental management services offered by the rental program would be furnished to some but not all owners at the Galvestonian. The Declaration does not include marketing and rental management services among the services customarily rendered to all owners and occupants of residences. Thus, the plan offered a different type of service to owners than required by the Declaration and rendered these services only to some owners, not all of them.

Although the Declaration affords broad general power to the Association to adopt "necessary or desirable" rules for the operation of the condominium, those rules cannot conflict the provisions of the Declaration. The rental rule capping the rental program at 40% conflicted with section 3.8 of the Declaration. Even if the

20

Association had a reason, this sort of disparate provision of services to some but not all of the owners was prohibited by the Declaration.

The Association also argues that Riley failed to produce evidence that the board's action in adopting restrictive rental program rules was arbitrary, capricious, or discriminatory. Because we have concluded that the Association had no authority to adopt the rule limiting participation in the rental program, we do not reach the question of whether the Association exercised its discretionary authority reasonably. *See* TEX. PROP. CODE § 202.004(a) ("An exercise of discretionary authority by a property owners' association or other representative designated by an owner of real property concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory.").

### C. Imposing fees on owners who rent outside the rental program violates the Declaration.

In its second issue, the Association argues that the trial court erred by ruling that imposing fees on owners who rent outside the rental program violates the Declaration. In the trial court, both Riley and the Association moved for partial summary judgment on Riley's claim that this rule breached a restrictive covenant in the Declaration. Riley argued that the Association lacked the authority to impose fees on owners who rent outside the rental program because the Declaration authorized only two types of assessments and this fee did not comport with either

type. The Association argued that such additional fees were not prohibited by the Declaration. Relying on two Corpus Christi Court of Appeals cases, it also argued that the fees are not improper because they were charged to those outside renters who placed "a disproportionate burden on the other homeowners" and caused "problems for the owners as a whole" by heavily using amenities. We review this issue de novo because it requires us to construe the Declaration. *See Tarr*, 556 S.W.3d at 279.

Section 1.02 of the 2015 rental rules required owners who rented outside the rental program to pay fees that had not previously been assessed:

> 1.02 <u>Other rentals</u>. Owners of Residences have historically rented their Residences outside or independently of the Program. These Rules and Regulations relating to the Rental of Residences do not prevent Owners from renting their Residences outside the Program. However, in an effort to safeguard the Association and all Owners, and to achieve greater parity and equity among Owners who rent their Residences through the Program, ***all rentals of Residences outside the Program must be in accordance with these Rules*** and Regulations relating to the Rental of Residences ***to assure*** that the Association has appropriate information on renters, that all rentals are compliant with the Declaration, and ***that the Owner of the Residence pays fees to the Association to cover administrative, operating and maintenance costs (such as, by way of example and not in limitation, front desk services, continental breakfasts, beach towels, cleaning and maintaining Common Areas and recreational areas, recreational activities, trash disposal, utility costs, personnel expenses, marketing expenses, information technology and internet services, and general wear and tear)*** in the same manner as Owners who rent their Residences through the Program. Rentals of Residences outside the Program must also be in accordance with these Rules and Regulations so that the Association has a means of identifying persons who have a right to be on the

22

premises, as well as a right to use the recreational areas and other facilities of the Association.

(Emphasis added.)

The 2015 rental rules established a resort fee of $7.00 per night for all short-term rentals, whether through the rental program or outside the program. The rules provided that owners who rented through the program would pay a percentage of rental income while those not in the rental program would pay a nightly fee depending on the size of the unit and length of the rental term. These fees were intended to cover the "administrative, operational and maintenance costs, as described in Section 1.02."

The Texas Condominium Act provides that an owner in a condominium regime is "responsible for" his "pro rata share" of:

    (1)    the expenses to administer the condominium regime and to maintain and repair the general common elements;

    (2)    in proper cases, the expenses to administer the limited common elements of the buildings in the condominium regime; and

    (3)    other expenses approved by the council of owners.

TEX. PROP. CODE §81.204(a).[4] An owner "is not exempted from the obligation under this section to contribute toward the expenses of the condominium regime by waiving the use of the common elements . . . ." *Id.* §81.204(b).

---

[4]    Two chapters of the Texas Property Code apply to condominium regimes; in general, chapter 81, the Texas Condominium Act, applies to condominium regimes created before January 1, 1994, and chapter 82, the Texas Uniform Condominium

The Galvestonian's Declaration mirrors section 81.204. Section 4.1 required "all owners" to

> contribute to the Common Expense Fund as Common Expense Charge in proportion to their Percentage Ownership Interests, the expenses of (a) administration of the Condominium Regime, (b) the administration, maintenance and repairs of the Common Elements, (c) other expenses provided by the terms hereof to be paid by expenses provided by the terms hereof to be paid by the Condominium Association, and (d) those expenses that the Condominium Association agrees to assume pursuant to this Declaration, the By-Laws and Rules and Regulations. The Common Expense Charges shall be assessed in accordance with the provisions of this Article IV. No owner shall be exempt from the obligation to make such contribution to the Common Expense Fund by waiver of the use or enjoyment of the Common Elements, by abandonment of his Residence or for any other reason or under any other circumstances.

"The Common Expense Charge shall be allocated among the Owners according to their respective Percentage Ownership Interests." In addition to common expense charges, the Declaration authorizes the Association's board to levy a special assessment when it determines that the common expense charges "are or may prove to be" insufficient to pay "the costs of operation and management of the

---

Act, applies to condominiums "for which the declaration is recorded on or after January 1, 1994." *See* TEX. PROP. CODE §§ 81.001; *id.* §§ 82.002. In addition, certain provisions of chapter 82 expressly apply to condominiums for which the declaration was recorded before January 1, 1994. *Id.* §82.002(c). These provisions include: (1) section 82.054, concerning the construction and validity of declarations and bylaws; (2) section 82.102(a)(1–7), (a)(12–21), (f), (g), concerning the powers of a unit owners' association; and (3) section 82.161, concerning the effect of violations on rights of action and attorney's fees. The Galvestonian's Declaration was recorded in 1983; chapter 81 and the selected provisions of chapter 82, therefore, apply in this appeal.

24

Condominium for a fiscal year, or in the event of casualty losses, condemnation losses or other events." Special assessments may only be levied with the prior majority vote of the members of the Association.

Section 3.8 of the Declaration also expressly provides that costs for certain services shall be paid from the common expense fund:

> The Condominium Association shall, for the benefit of all the Owners, provide, perform, cause to be performed, maintained, acquired, contracted and paid for out of the Common Expense Fund, the following:
>
> (a) Utility services used in or for the Common Elements, water and sewer services used by or consumed by Residences and, if not separately metered or charged, other utility services for the Residences. Electricity, telephone and other utility services metered or charged shall be paid for by the Owner of the Residence served by such utility service.
>
> (b) The insurance required by [the Declaration] and such other policies of casualty, liability and/or other insurance covering persons, property and risks as are in the best interests of the Condominium.
>
> (c) The services of a Managing Agent and such other persons as the Board of Directors, from time to time, determines to be necessary or proper for the daily management, operation and maintenance of the Condominium.
>
> (d) All supplies, tools and equipment reasonably required for use in the management, operation, maintenance, cleaning and enjoyment of the Condominium.
>
> (e) The cleaning, maintenance, repairing, reconstruction and replacement of the Common Elements as the Board of Directors determines to be necessary for the operation of the

25

Condominium in a manner consistent with the desires of the members of the Condominium Association.

(f) The removal of all trash, garbage and rubbish from the central garbage receptacle or receptacles of the Building, including the employment of the public or private services of a garbage collection company or agency.

(g) Costs of (i) bookkeeping of the accounts of the Condominium Association and the annual accounting provided for in the Declaration and in the By-Laws; (ii) legal and accounting services and fees of the Council of Co-Owners; (iii) premiums of fidelity bonds and (iv) taxes and assessments of whatever type assessed against or imposed upon the Common Elements.

The fees levied against owners not participating in the rental program by the 2015 rental rules overlap with the common expense charges. For example, the rental rules provide that the additional fee may cover "front desk services" and "personnel expenses." But the Declaration requires that the common expense fund be used to pay for the services of both a managing agent as well as "such other persons" that the board "determines to be necessary or proper for the daily management, operation and maintenance of the Condominium."

The rental rules provide that the additional fee may cover "cleaning and maintaining Common Areas and recreational areas." The Declaration defines "common elements" to include recreational areas and "Common Areas," which are "the lobbies, hallways, stairs, reception room and other Common Elements intended to be used for passage or temporary occupancy by persons." And the Declaration

26

requires that the common expense fund be used to pay for the "cleaning, maintenance, repairing, reconstruction and replacement of the Common Elements."

The rental rules provide that the additional fees may be used for "trash disposal" and "utility costs." But the Declaration requires that the common expense fund be used to pay for "removal of all trash, garbage and rubbish from the central garbage receptacle or receptacles of the Building, including the employment of the public or private services of a garbage collection company or agency." The Declaration also requires that the common expense fund be used to pay for "[u]tility services used in or for the Common Elements, water and sewer services used by or consumed by Residences and, if not separately metered or charged, other utility services for the Residences."

The Association relies on *Gulf Shores Council of Co-Owners, Inc. v. Raul Cantu No. 3 Family Ltd. Partnership*, 985 S.W.2d 667 (Tex. App.—Corpus Christi 1999, pet. denied), and *Raymond v. Aquarius Condominium Owners Ass'n, Inc.*, 662 S.W.2d 82 (Tex. App.—Corpus Christi 1983, no writ), for the proposition that the general authorizations in the Declaration justify the imposition of additional fees on owners who rent their units but do not participate in the rental program.

In *Gulf Shores*, the court of appeals held that, under a Declaration of Condominium, a council of co-owners could levy fees on condominium unit owners who rented their units outside a rental pool. 985 S.W.2d at 669. Like the Association,

the board of the council of co-owners enacted a policy regulating the rental of units outside the pool and levied fees on those units "to cover the additional expenses caused by renters." *Id.* The Declaration authorized the council of co-owners to assess the owners for their pro-rata share of the common expenses "and otherwise as herein provided." *Id.* at 671. The Declaration also expressly provided that the "making and collection of assessments . . . for Common Expenses shall be subject to the Bylaws." *Id.* The bylaws "provided the Board shall have full power and authority to charge or assess the members of the corporation for funds required for the performance of its objects and purposes as set forth in the Declaration." *Id.* The court of appeals concluded that the bylaws authorized the board to "exercise powers necessary or proper to obtain the object of the corporation," and to levy fees against owners renting outside the rental pool, so long as the fees were "reasonably necessary to achieve the purpose of creating a uniform plan for development and operation of the condominium project." *Id.*

The Association has argued that "similar language" to that used in *Gulf Shores* is in the Declaration in this case. We disagree. The Declaration in this case is different. Section 3.1 of the Declaration incorporates by reference the Texas Condominium Act, which makes an owner responsible for his pro rata share of "other expenses approved by the council of owners." TEX. PROP. CODE §81.204(a). The Galvestonian's Declaration states that common expense charges "shall be

assessed in accordance with the provisions of this Article IV." While Article IV authorizes the board of the Association to levy a special assessment, the standard for such a special assessment is not the broad standard from *Gulf Shores* that the assessment be "reasonably necessary to achieve the purpose of creating a uniform plan for development and operation of the condominium project." *Id.* Instead, the board must "reasonably determine that the Common Expense Charges so levied are or may prove to be [in]sufficient to pay the costs of operation and management of the Condominium for a fiscal year." In addition, the special assessment "shall not be levied . . . without the prior approval" of a majority of owners, not merely the board of the Association. Nothing in the Galvestonian Declaration permits the Association to levy a common expense charge and then levy a fee that covers at least some of the same expenses covered by the common expense fund.

The Association also argues that *Raymond* supports its actions. We disagree. The Association represents that in *Raymond*, the court of appeals approved the levying of fees against owners who did not participate in a rental pool as an exercise of the board's power under the Texas Condominium Act. A careful reading of *Raymond*, however, shows that it is unlike the present case. 662 S.W.2d at 86. In *Raymond*, the condominium owners association sued an owner for nonpayment of common expenses and special assessments. *Id.* The owner argued that the common expense charges and special assessments to pay for maintenance and repair of

common elements were inflated due to the existence of a rental pool and that expenses associated with the rental pool did not qualify as allowable expenses under the Condominium Act. *Id.* at 86–87. In *Raymond*, the issue was the owner's failure to pay his pro rata share of expenses, not the levying of additional fees—against some but not all of the owners—to pay for expenses that the Declaration already required to be paid from a common expense fund. *See id.* We conclude that *Raymond* is inapposite to the situation presented by this appellate issue.

We conclude that the imposition of the fees described in the 2015 rental rules on owners who rent their units but do not participate in the rental program is inconsistent with the Galvestonian's Declaration. We hold that the trial court did not err by granting partial summary judgment in Riley's favor regarding this rule. We overrule the Association's second issue.

## II. Riley's challenges to renter age-limit policy (Riley's issues 6 & 7)

Riley's sixth and seventh issues concern the 2015 rental rule that prohibited renting a unit to a person under the age of 25. Riley pleaded that this rule breached a restrictive covenant, and he moved for partial summary judgment. The trial court determined that this issue could not be resolved as a matter of law because there was a question of fact about whether this rule was arbitrary, capricious, or discriminatory. That fact question was submitted to the jury, which found that the age restriction was not arbitrary, capricious, or discriminatory. Riley moved for entry of judgment

30

and to disregard certain jury findings, including the finding that the age restriction was not arbitrary, capricious, or discriminatory. Although he conceded at trial that this was a question of fact for the jury, in his motion to disregard the jury finding, Riley argued that this finding was immaterial because this was a question of law for the court to determine based on statutory construction. The trial court denied the motion to disregard the jury finding. On appeal, Riley again urges that the finding should have been disregarded and that the court should have resolved this cause of action in his favor as a matter of law.[5] We disagree.

A motion to disregard a jury finding may be granted only if the finding has no support in the evidence or the issue is immaterial. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 505 (Tex. 2018); *Spencer v. Eagle Star Ins. Co. of Am.*, 876 S.W.2d 154, 157 (Tex. 1994); *C. & R. Transp., Inc. v. Campbell*, 406 S.W.2d 191, 194 (Tex. 1966). "A jury answer is immaterial when the question 'should not have been submitted, or when it was properly submitted but has been rendered

---

[5] Riley's issues 6 and 7 are:

> 6. If restrictive covenants in a condominium declaration do not impose an age or other restriction on persons to whom an owner can rent or lease his unit, can the Association unilaterally impose such a restrictive covenant?

> 7. If not, did the trial court err in failing to grant Riley relief related thereto?

31

immaterial by other findings.'" *Menchaca*, 545 S.W.3d at 506 (quoting *Spencer*, 876 S.W.2d at 157).

In *Tarr*, the Texas Supreme Court explained that although courts traditionally have construed restrictive covenants narrowly, a provision added to the Property Code in 1987 provides that a "restrictive covenant shall be liberally construed to give effect to its purposes and intent." 556 S.W.3d at 282 (citing TEX. PROP. CODE § 202.003(a)). The question in *Tarr* was whether a restrictive covenant in a deed restriction that required the land to be used for "residential purposes" precluded the homeowner from engaging in short-term leasing of his house. *Id.* at 276. The homeowners' association contended that it did because the homeowner was using his house for a business purpose as a commercial rental property. *Id.* at 277. It assessed fines against the homeowner, who sought a declaratory judgment that his use of the house was acceptable.

The Supreme Court declined to reconcile the apparent conflict between the common-law rule of narrow construction of restrictive covenants and the statutory rule of liberal construction. *Id.* at 284–85. It concluded that the covenants "unambiguously fail to address the property use complained of in this case," and it said: "No construction, no matter how liberal, can construe a property restriction into existence when the covenant is silent as to that limitation." *Id.* at 285. Riley relies on this statement to argue for a narrow interpretation of the Declaration. He also

argues that the Declaration does not allow the Association to impose a requirement that acts as a restrictive covenant. We disagree.

Section 2.5 of the Galvestonian Declaration authorizes the Association to adopt rules that are not expressly included in the Declaration itself. Section 2.5 of the Declaration authorizes the Association to

> provide such additional rules and regulations for use of . . . the Residences as are necessary or desirable in the judgment of the . . . Association for the operation of the condominium; provided that such Rules and Regulations . . . are not in conflict with the provisions of this Declaration.

This provision is a delegation of discretionary authority to the Association, and its adoption of the age limitation in the 2015 rental rules was an exercise of that discretionary authority. "An exercise of discretionary authority by a property owners' association . . . concerning a restrictive covenant is presumed reasonable unless the court determines by a preponderance of the evidence that the exercise of discretionary authority was arbitrary, capricious, or discriminatory." TEX. PROP. CODE § 202.004(a). The jury determined that the adoption of the age limitation rule was not arbitrary, capricious, or discriminatory. That finding was supported by testimony at trial from Yusha Abouhalkah, an owner and board member, who testified that they encourage a family friendly environment as opposed to a spring break or fraternity party atmosphere and that the age limitation helped ensure financial responsibility.

Riley argues that the amendments to Declaration removed the Association's right to approve tenants for short term rentals and that the age restriction rule is an attempt to create a restrictive covenant by adopting a rule. However, that is expressly what the Declaration authorizes: section 2.5 of the Declaration states that rules and regulations adopted by the Association "shall be applicable to the . . . Residences as if set forth herein."

Riley has not shown that the jury's finding on the age limitation was immaterial. We overrule his sixth and seventh issues.

## III. Riley's challenge to "private" board workshop meetings (Riley's issues 8 & 9)

In his eighth and ninth issues Riley contends that the Association failed to comply with sections 82.108, 82.114, and 82.161 of the Texas Property Code, which concern requirements for open meetings of condominium owners' associations.[6] Both sides moved for summary judgment before trial on this cause of action, and the defendants moved for a directed verdict at trial. Both sides agreed it was a question

---

[6]    Riley's issues 8 and 9 are:

> 8.    If the Texas Uniform Condominium Act mandates that meeting of the board of directors of a condominium association "must be open to unit owners" subject to the board considering specific limited subject matter in closed executive session, can the Association none the less exclude owners from secret board meetings by calling them workshop meetings?
>
> 9.    If not, did the trial court err in failing to grant Riley relief related to such practices.

of law, and the trial court deferred ruling on the motion. In his motion for entry of judgment, Riley reurged this claim and asked the trial court to enjoin the Association from holding secret workshop meetings. In its final judgment, the court denied his request for injunctive relief.

In his brief, Riley reasserts his claim regarding the secret workshop meetings and his contentions about statutory construction. He then asserts that the trial court erred by not granting a writ of mandamus and asks this court to grant a writ of mandamus.

Mandamus is an extraordinary remedy that is only available in limited circumstances. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992). To be entitled to mandamus relief, relator must show both that the trial court clearly abused its discretion and that no adequate remedy by appeal exists. *See In re Kansas City S. Indus., Inc.*, 139 S.W.3d 669, 670 (Tex. 2004). "An appeal is inadequate when it comes too late to correct the [trial] court's error without the loss of substantial rights to the complaining party." *Id.*

After three years of litigation, the court held a two-week trial and subsequently considered the parties' post-verdict and post-judgment motions. Riley has not shown his entitlement to mandamus relief. *See id.* We overrule Riley's eighth and ninth issues.

**IV.** **The trial court did not err by rendering a take-nothing judgment as to the housekeeping fees. (Riley's 5th issue)**

In his fifth issue, Riley argues that the trial court erred by failing to award him $320 in damages for excessive housekeeping charges. He contends that the amount of his damages was conclusively proven, and the jury found that charging an independent rental owner more than a rental program owner for rush housekeeping services was arbitrary, capricious, or discriminatory.[7] In his brief, Riley characterizes this as a legal sufficiency challenge. *See City of Keller v. Wilson*, 168 S.W.3d 802, 814 & n.52 (Tex. 2005) (uncontroverted fact issues should not be submitted to a jury).

A legal sufficiency issue is preserved by "one of the following: (a) a motion for instructed verdict; (2) a motion for judgment notwithstanding the verdict; (3) an objection to the submission of the issue to the jury; (4) a motion to disregard the jury's answer to a vital fact issue; or (5) a motion for new trial." *T.O. Stanley Boot Co., Inc. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992). Riley did not raise the issue of judgment for the amount of excess rush housekeeping fees in a motion for instructed verdict, a motion for judgment notwithstanding the verdict, an objection to the jury charge, a motion to disregard the jury's verdict or a motion for

---

[7] The jury was not asked to determine the amount of damages, if any, suffered by Riley as a result of the rush housekeeping charges assessed against owners who rented their units outside the rental program.

new trial. He did, however, raise the issue in a post-judgment motion to modify the judgment, in which he argued that he was entitled to judgment in the amount of $320 as a matter of law because the jury found the surcharge on rush housekeeping fees arbitrary, capricious, or discriminatory and his testimony about the amount of the fees was not controverted. This challenge was, in substance, a motion for directed verdict or for judgment notwithstanding the verdict. We conclude that Riley preserved this issue for appellate review. *See Republic Petroleum LLC v. Dynamic Offshore Res. NS LLC*, 474 S.W.3d 424, 429 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) ("[I]t is not the title of the post-trial motion that governs the standard of review; rather, it is the relief requested and the substance of the challenge presented.").

Riley contends that he is entitled to judgment as a matter of law. We review this issue de novo. *Internacional Realty, Inc. v. 2005 RP West, Ltd.*, 449 S.W.3d 512, 530 (Tex. App.—Houston [1st Dist.] 2014, pet. denied). A trial court may properly grant a motion for directed verdict when the evidence is conclusive and establishes the movant's entitlement to recovery as a matter of law. *See Envtl. Processing Sys., L.C. v. FPL Farming Ltd.*, 457 S.W.3d 414, 426 (Tex. 2015); *Pitts & Collard, L.L.P. v. Schechter*, 369 S.W.3d 301, 320 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

Riley asserts that this case is analogous to *Duncan v. Dominion Estates Homeowners Ass'n*, No. 01-09-01086-CV, 2011 WL 3505298, at *6 (Tex. App.—

37

Houston [1st Dist.] Aug. 11, 2011, no pet.) (mem. op.), in which this court rendered judgment for recovery of $250 that had been assessed in a manner contrary to the homeowners' association's restrictive covenants. *Id.* at *1. In *Duncan*, the evidence conclusively proved that the $250 assessment was entirely improper.

In the trial court and on appeal, Riley argued that he "conclusively established at trial that he had been required to pay $320 more for housekeeping services" because of the Association's rule, which doubled certain housekeeping fees for owners not participating in the rental program. We disagree. Riley gave the only testimony about how much he paid for double housekeeping fees:

> Q.     The double turnaround fees that you were charged, do you know how much double turnaround or the time that they were doing that you were charged.
>
> A.     I believe it was, like, $320.

Riley's testimony does not conclusively establish his right to recovery because it is ambiguous whether the $320 he paid represented only the surcharge as compared to the rates charged to other condominium unit owners or the total doubled amount of housekeeping fees. Because the evidence in this case is not conclusive, we hold that the trial court did not err by denying the motion to modify the judgment and by not rendering judgment for Riley for $320. We overrule Riley's fifth issue.

## V.     Attorney's fees and costs (Riley's issues 1–4 & the Association's issue 3)

### A.     Entitlement to attorney's fees and determination of the amount

38

Texas has long followed the "American Rule" prohibiting fee awards unless specifically provided by contract or statute. *MBM Fin. Corp. v. Woodlands Operating Co., L.P.*, 292 S.W.3d 660, 669 (Tex. 2009) (citing *Tony Gullo Motors I, L.P. v. Chapa*, 212 S.W.3d 299, 310–11 (Tex. 2006)). "To be entitled to an award of attorney's fees, a party must file an affirmative pleading requesting them." *Whallon v. City of Hous.*, 462 S.W.3d 146, 165 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (quoting *Menix v. Allstate Indem. Co.*, 83 S.W.3d 877, 880 (Tex. App.— Eastland 2002, pet. denied). "[I]f a party pleads facts which, if true, entitle him to the relief sought, he need not specifically plead the applicable statute in order to recover [attorney's fees] under it." *Whallon*, 462 S.W.3d at 165 (quoting *Gibson v. Cuellar*, 440 S.W.3d 150, 156 (Tex. App.—Houston [14th Dist.] 2013, no pet.)); *see Mitchell v. LaFlamme*, 60 S.W.3d 123, 130 (Tex. App.—Houston [14th Dist.] 2000, no pet.) (holding that appellants, who prayed for attorney's fees generally, could argue that they were entitled to attorney's fees under section 5.006(a) of Property Code despite not raising applicability of that statute in trial court).

Fee-shifting statutes may be discretionary or mandatory. *See Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) (comparing discretionary statutes that state court "may" award fees with mandatory statutes that state party "may recover," "shall be awarded," or "is entitled to" attorney fees). "In general, the reasonableness of statutory attorney's fees is a jury question." *City of Garland v. Dallas Morning*

*News*, 22 S.W.3d 351, 367 (Tex. 2000); *see Smith v. Patrick W.Y. Tam Tr.*, 296 S.W.3d 545, 547 (Tex. 2009). But fee-shifting statutes may also specify who determines the amount of the fees. *Meyers v. 8007 Burnet Holdings, LLC*, 600 S.W.3d 412, 429 (Tex. App.—El Paso 2020, pet. denied). A statute may explicitly assign the duty of determining the amount of attorney's fees to the trial court or the factfinder. *Id.* at 429–30. A statute may also "provide[] that the court awards the fees and in doing so, the court should consider specific factors." *Id.*; *see Ogu v. C.I.A. Servs. Inc.*, No. 01-07-00933-CV, 2009 WL 41462, at *3 (Tex. App.—Houston [1st Dist.] Jan. 8, 2009, no pet.) (mem. op.) (concluding that fee-shifting statute permitted a jury trial on the amount of attorney's fees).

An award of attorney's fees under a fee-shifting statute must be reasonable and necessary. *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 498, 501 (Tex. 2019). The lodestar analysis applies when a party seeks recovery of attorney's fees under any fee-shifting statute. *Id.* at 495–98, 501. A "claimant seeking an award of attorney's fees must prove the attorney's reasonable hours worked and reasonable rate by presenting sufficient evidence to support the fee award sought." *Id.* at 501–02. Sufficient evidence includes, at a minimum, evidence of (1) particular services performed, (2) who performed those services, (3) approximately when the services were performed, (4) the reasonable amount of time required to perform the services, and (5) the reasonable hourly rate for each person

performing such services." *Id.* at 502 (citing *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 762–63 (Tex. 2012)). "General, conclusory testimony devoid of any real substance will not support a fee award." *Id.* at 501. While "[c]ontemporaneous billing records are not required to prove that the requested fees are reasonable and necessary," the "lodestar calculation should produce an objective figure that approximates the fee that the attorney would have received had he or she properly billed a paying client by the hour in a similar case." *Id.* at 498, 502.

In addition, attorney's fees that "relate solely to a claim for which such fees are unrecoverable," must be segregated from fees that relate to a claim for which they are recoverable. *Chapa*, 212 S.W.3d at 313. "Intertwined facts do not make tort fees recoverable; it is only when discrete legal services advance both a recoverable and unrecoverable claim that they are so intertwined that they need not be segregated." *Id.* at 313–14. In some circumstances, it may be necessary for a plaintiff to segregate fees on a claim-by-claim basis. *See Horizon Health Corp. v. Acadia Healthcare Co., Inc.*, 520 S.W.3d 848, 884 (Tex. 2017). Commonality of facts alone does not excuse a plaintiff's failure to segregate fees. *Chapa*, 212 S.W.3d at 313–14; *Khoury v. Tomlinson*, 518 S.W.3d 568, 581 (Tex. App.—Houston [1st Dist.] 2017, no pet.) (requiring segregation of attorney's fees; facts of underlying claims were intertwined but no evidence showed that legal services were intertwined); *BSG-Spencer Highway Joint Venture, G.P. v. Muniba Enters., Inc.*, No. 01-15-01109-CV,

41

2017 WL 3261365, at \*15 (Tex. App.—Houston [1st Dist.] Aug. 1, 2017, no pet.) (mem. op.) (determining prevailing party status based on success regarding main issues at trial).

**B.**     **The Association is entitled to attorney's fees, but the individual defendants are not.**

In the third cross-appellants' issue, the Association and the individual defendants argue that they were the prevailing parties on Riley's "contractual/breach of restrictive covenant" claims, and they are entitled to an award of attorney's fees. In their first amended original counterclaim, they pleaded for attorney's fees and costs under the Texas Uniform Condominium Act, section 82.161 of the Texas Property Code, and section 15.21(a)(3) of the Texas Business and Commerce Code, regarding antitrust claims.

In their motion for judgment notwithstanding the verdict for attorney's fees, the Association and the individual defendants argued that Riley was not a prevailing party on his "breach of contract/breach of restrictive covenant claims." They asserted that they were the prevailing parties on those claims. They argued that Riley was not a prevailing party because he did not recover actual damages, and because the Association voluntarily declined to enforce the 40% cap on membership in the rental program and the new fees in the 2015 rental rules for owners renting without participating in the rental program. Finally, the individual defendants asserted that

they were prevailing parties because Riley nonsuited his claims against them in order to avoid an unfavorable ruling.

On appeal, the Association argues that all cross-appellants expressly counterclaimed for attorney's fees under chapter 38 of the Texas Civil Practice and Remedies Code and section 5.006 of the Texas Property Code. The Association argues that it was the prevailing party on Riley's breach of contract claims. The individual defendants, who filed a separate cross-appellants' brief, only argued on appeal that they were not required to specifically plead a statutory basis for attorney's fees.

Section 38.001 of the Texas Civil Practice and Remedies Code provides that a "person may recover reasonable attorney's fees from an individual or corporation, in addition to the amount of a valid claim and costs, if the claim is for . . . an oral or written contract." TEX. CIV. PRAC. & REM. CODE § 38.001(8). "Section 38.001, however, does not provide for attorney's fees for a party's successful defense against a breach of contract claim." *Cytogenix, Inc. v. Waldroff*, 213 S.W.3d 479, 490–91 (Tex. App.—Houston [1st Dist.] 2006, pet. denied). *But see Bankcard Processing Int'l, L.L.C. v. United Bus. Servs., L.P.*, No. 01-10-01079-CV, 2012 WL 3776024, at *9 (Tex. App.—Houston [1st Dist.] Aug. 30, 2012, pet. denied) (mem. op.) (successful defendant may be entitled to attorney's fees when parties contract for prevailing party to recover attorney's fees). Similarly, section 5.006 provides that a

43

successful *plaintiff* may recover attorney's fees, but it is silent as to recovery by a successful defendant: "In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to *a prevailing party who asserted the action* reasonable attorney's fees in addition to the party's costs and claim." TEX. PROP. CODE § 5.006(a) (emphasis added). The defendants, as successful *defendants*, cannot recover attorney's fees under section 38.001 or section 5.006 because they were not the parties who asserted the action.[8]

The Uniform Condominium Act provides that the "prevailing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party." TEX. PROP. CODE § 82.161(b). This statute does not expressly assign the duty of determining the amount of attorney's fees to either the court or the factfinder nor does it expressly state that the court shall consider certain factors in determining the amount of attorney's fees. *See Meyers*, 600 S.W.3d at 429–30. Therefore, the general rule that the factfinder determines the amount of attorney's fees applies to awards under section 82.161(b). *See City of Garland*, 22 S.W.3d at 367; *Smith*, 296 S.W.3d at 547.

---

[8]     Moreover, Riley's live pleading did not include a claim for breach of contract. *See Eun Bok Lee v. Ho Chang Lee*, 411 S.W.3d 95, 106 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("Trial by consent is intended for the exceptional case in which it appears clearly from the record as a whole that the parties tried an unpleaded issue— it should be applied with care and never in a doubtful situation.").

To the extent that the individual defendants seek attorney's fees under the Uniform Condominium Act, that issue was waived by their failure to submit to the jury an issue on the amount of their reasonable and necessary attorney's fees. Because no question regarding reasonable and necessary attorney's fees for services rendered to the individual defendants was submitted to the jury, their claim for attorney's fees is waived. *See* TEX. R. CIV. P. 279 ("Upon appeal all independent grounds of recovery or of defense not conclusively established under the evidence and no element of which is submitted or requested are waived."); *Intercont'l Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 659 (Tex. 2009) ("Given that both parties tried questions of breach and attorney's fees to the jury, Intercontinental cannot be excused for failing to submit a jury question on attorney's fees incurred in defending KB Home's lawsuit on the written contract, or otherwise preserving the issue for appellate review.").

The Association, however, pleaded for attorney's fees under Texas Property Code section 82.161, which provides: "[t]he prevailing party in an action to enforce the declaration, bylaws, or rules is entitled to reasonable attorney's fees and costs of litigation from the nonprevailing party." TEX. PROP. CODE § 82.161(b). In *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, the Texas Supreme Court held that a defendant can be a prevailing party when it obtains "actual and meaningful relief, materially altering the parties' legal relationship, by successfully defending against

45

a claim and securing a take-nothing judgment on the main issue or issues in the case." 578 S.W.3d at 486.

At trial, the damages issue asked: "What sum of money, if paid now in cash, would fairly and reasonably compensate Mr. Riley for his injuries, if any, that resulted from The Galvestonian enforcing a 40% cap on the Rental Program?" The measure of damages in the jury charge was: "[t]he difference, if any, between the profit Mr. Riley earned as an independent unit renter and the amount he would have earned as part of the Rental Program." The jury answered "zero." Because the Galvestonian secured a take-nothing judgment on the main issue in the case, it is entitled to attorney's fees. *See* TEX. PROP. CODE § 82.161(b); *Rohrmoos Venture*, 578 S.W.3d at 486.

At trial, a question regarding the "reasonable fee, if any, for the necessary services of The Galvestonian's attorneys" was submitted with granulated questions for services related to antitrust and services related to restrictive covenants. "The Galvestonian" was defined in the court's charge as "Defendant Galvestonian Condominium Association." The jury found that a reasonable fee for the necessary services of the Association's attorneys related to restrictive covenants through the completion of proceedings in the trial court was $42,117. Accordingly, we reverse the trial court's judgment denying attorney's fees to the Association on its claim for attorney's fees, and we render judgment in favor of the Association for $42,117.

46

## C.      Riley is entitled to remand on his claim for attorney's fees and costs.

In his first and second issues, Riley argues that he was the prevailing party on his claim for breach of restrictive covenants and is entitled to an award of attorney's fees. *See* TEX. PROP. CODE § 5.006.[9] In his third issue he argues that the trial court erred by not allowing him to recover costs under the Texas Rules of Civil Procedure. His fourth issue asserts that the trial court erred by failing to state on the record good cause for not adjudging costs in his favor.

Section 5.006 of the Property Code provides: "In an action based on breach of a restrictive covenant pertaining to real property, the court shall allow to a prevailing party who asserted the action reasonable attorney's fees in addition to the party's costs and claim." TEX. PROP. CODE § 5.006(a). An award of attorney's fees to a prevailing plaintiff under this statute is mandatory. *BCH Dev., LLC v. Lakeview Heights Addition Prop. Owners' Ass'n*, No. 05-17-01096-CV, 2019 WL 2211479,

---

[9]    On appeal, Riley does not rely on any other statute to support his claim that he is entitled to attorney's fees. Riley pleaded for attorney's fees generally. The jury was asked to determine "a reasonable fee" for the "necessary attorney services" related to "breach of contract/restrictive covenants." The jury found that the lump sum of $228,750 was a reasonable fee. In his motion for entry of judgment and subsequent motion to modify the judgment, Riley argued that he was entitled to attorney's fees as the prevailing party under Texas Property Code sections 5.006(a) (attorney's fees in breach of restrictive covenant action) and 82.161(b) (attorney's fees under the Uniform Condominium Act). On appeal, he argues that he was the prevailing party in his suit to enforce restrictive covenants against the Association (issue 1) and that the court erred by not awarding him reasonable and necessary attorney's fees and costs of suit under section 5.006(a) (issue 2). He does not complain on appeal about the trial court's failure to award attorney's fees under section 82.161.

at *11 (Tex. App.—Dallas May 21, 2019, pet. denied) (mem. op.); *see Inwood N. Homeowners' Ass'n, Inc. v. Meier*, 625 S.W.2d 742, 744 (Tex. Civ. App.—Houston [1st Dist.] 1981, no writ). "Whether a party prevails turns on whether the party prevails upon the court to award it something, either monetary or equitable." *Intercontinental Grp. P'ship*, 295 S.W.3d at 655. A party may be a prevailing party for the purpose of recovering attorney's fees when he obtains declaratory relief that materially alters the legal relationship between the parties. *See id.*

Unlike section 82.161 under which we held that the Association should recover the amount of attorney's fees determined by the jury, section 5.006(b) expressly states that the court shall consider certain factors in determining the amount of attorney's fees:

> To determine reasonable attorney's fees, the court shall consider:
>
> > (1)   the time and labor required;
> > (2)   the novelty and difficulty of the questions;
> > (3)   the expertise, reputation, and ability of the attorney; and
> > (4)   any other factor.

*Id.* § 5.006(b); *see Meyers*, 600 S.W.3d at 429–30.

In *Meyers*, the court of appeals considered whether section 125.003(d) of the Civil Practice and Remedies Code required a court, as opposed to the jury, to determine the amount of attorney's fees. *Id.* at 430. Section 125.003(d) provides:

> In an action brought under this chapter, the court may award a prevailing party reasonable attorney's fees in addition to costs. In determining the amount of attorney's fees, the court shall consider:

(1) the time and labor involved;
(2) the novelty and difficulty of the questions;
(3) the expertise, reputation, and ability of the attorney; and
(4) any other factor considered relevant by the court.

TEX. CIV. PRAC. & REM. CODE § 125.003(d). The court of appeals concluded that "the plain language of the statute" "commits to the trial court both the question of entitlement to fees and the criteria for awarding fees." *Meyers*, 600 S.W.3d at 430–31. Accordingly, it held that the question of the amount and reasonableness of the attorney's fees was a question for the court, not the jury. *See id.* at 431.

Section 5.006(b) of the Property Code includes language that is nearly identical to section 125.003 of the Civil Practice and Remedies Code. And section 5.006 plainly commits to the trial court the question of the amount and reasonableness of an award of attorney's fees under that section. *See* TEX. PROP. CODE § 5.006(b) We hold that the amount of the attorney's fees that Riley sought under section 5.006 was a question for the court, not the jury. *See id.*

Although we have concluded that the Association was the prevailing party on the merits of Riley's claim for damages arising from his exclusion from the rental program, we also conclude that Riley prevailed by obtaining a declaratory judgment that: "A Rental Program that is not available to all condominium owners violates The Galvestonian Declaration of Condominium." *See Intercont'l Grp. P'ship*, 295 S.W.3d at 655 (party may be prevailing party by obtaining declaratory relief that materially alters legal relationship between parties). Because Riley was a prevailing

49

party, a fee award under section 5.006 was mandatory. *See* TEX. PROP. CODE § 5.006(a); *BCH Dev.*, 2019 WL 2211479, at \*11; *Inwood N. Homeowners' Ass'n*, 625 S.W.2d at 744. We hold that the trial court erred by not awarding Riley any amount of attorney's fees.

We sustain Riley's first two issues. Because the amount of attorney's to be awarded under section 5.006 is committed to the trial court, we cannot render judgment based on the jury verdict. Accordingly, we remand for a new trial on mandatory attorney's fees under section 5.006.

Riley also argues on appeal that the trial court erred by not awarding costs or stating on the record good cause for not awarding costs. *See* TEX. R. CIV. P. 131 ("The successful party to a suit shall recover of his adversary all costs incurred therein, except where otherwise provided."); TEX. R. CIV. P. 141 ("The court may, for good cause, to be stated on the record, adjudge the costs otherwise than as provided by law or these rules."). In light of our remand to the trial court for a new trial on Riley's attorney's fees, we do not need to determine whether the trial court erred by failing to award costs or state good cause for not doing so on the record. *See* TEX. R. APP. P. 47.1. On remand, the trial court should either allocate costs relevant to the claims for which Riley is the successful party or adjudge the costs otherwise and state on the record good cause for doing so in accordance with rule 141.

## Conclusion

We reverse the judgment of the trial court denying an award of attorney's fees in favor of the Association, and we render judgment that the Association recover $43,117 in attorney's fees. We reverse the judgment of the trial court denying an award of attorney's fees in favor of Riley, and we remand for a new trial on attorney's fees and consideration of allocation of costs in accordance with this opinion. We affirm the remainder of the trial court's judgment.


Peter Kelly
Justice

Panel consists of Justices Kelly, Goodman, Countiss